George Lee **PARKER**, Appellant,

v.

**O. B. ELLIS**, General Manager, Texas Prison System, Appellee.

No. 17047.

United States Court of Appeals Fifth Circuit.

Aug. 29, 1958.

Rehearing Denied Sept. 29, 1958.

George Lee Parker, in pro. per.

Linward Shivers, Asst. Atty. Gen., Will Wilson, Atty. Gen., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents the question whether the court below committed error in declining to issue writ of habeas corpus [1] based upon appellant Parker's application claiming that he was denied due process of law under the Fourteenth Amendment in that he was tried before a Texas State Court when he was not represented by counsel, was sick and unable to defend himself, and the evidence was insufficient to support his conviction of the crime of forgery. The trial court issued an order to appellee Ellis, General Manager, Texas Prison System, to show cause why the writ should not be granted and to bring before the court the proceedings upon which the judgment of the State Court had been rendered.

In response to this order appellee brought before the court below copies of the indictment, capias, charge of the court, verdict, judgment, sentence and mandate, along with the docket entries of the District Court of the Sixty-ninth Judicial District, Moore County, Texas, attaching also the prison and criminal record of appellant. He drew the court's attention to the fact that appellant had appealed from the judgment of conviction, and that said judgment had been affirmed by the Court of Criminal Appeals of Texas. Appellee also exhibited with his return certificate of the trial judge,[2] and attached copies of proceedings in petition for habeas corpus which appellant had filed in a Texas State Court and the order there entered.

The court below ordered that the application for writ of habeas corpus be heard upon affidavits, (cf. 28 U.S.C.A. § 2246) and it was heard upon the application and the various other documents filed by appellant in his own behalf upon the return of the appellee and upon a transcript of the proceedings at the trial, which had been obtained by appellant through the assistance of a firm of lawyers and a doctor.

The facts presented to the court below were without dispute on any material point, and may be summarized as follows:

---

1. 28 U.S.C.A. § 2241 et seq.

2. 28 U.S.C.A. § 2245.

Appellant Parker, age sixty-six, was indicted by the Grand Jury of Moore County, Texas, for forging the name of Elzie Quattlebaum and Phoebia Quattlebaum on seven checks. On November 3, 1954, the case came on for hearing, and he stated that he was ready for trial and desired to be tried by jury.[3]

The State offered the testimony of Elzie Quattlebaum that he did not recognize the checks drawn on the account of Phoebia Quattlebaum, that he did not sign his name to any of the checks, that he knew and recognized the defendant, but did not authorize the defendant to sign his name to the checks in any manner, nor did his mother Phoebia. The Vice-President of the First State Bank of Dumas, Texas, testified that the appellant opened an account with that bank and that the checks in question were deposited to this account. A teller in the same bank testified that the appellant, with her assistance, opened the account with the bank by depositing three of the checks in question with her and that she saw the appellant endorse the checks for deposit. Sheriff John Easley testified that the accused admitted to him that he wrote the checks in question.

Parker did not take the witness stand, but called seven witnesses who testified to his good character. Sheriff Easley testified in rebuttal without objection that he had evidence of seven prior convictions for forgery, as shown by a F.B.I. report in the sheriff's office. The jury returned a verdict of guilty and fixed the punishment at seven years in the State Penitentiary. The court's judgment was entered accordingly, but the sentence ordered incarceration for not less than two nor more than seven years. March 23, 1955, the Court of Criminal Appeals affirmed the judgment of the State District Court.[4]

August 29, 1955, appellant made application to the Criminal Court of Appeals of Texas for a writ of habeas corpus where, for the first time, he raised the issue that he was denied representation by counsel and that he was ill at the time of the trial.[5] His petition set forth at length that he was wrongfully convicted

3. The following colloquy took place at the outset of the trial:

"The Court: I am calling for trial Cause No. 503, styled The State of Texas v. George Lee Parker. Is that you?

"Mr. Parker: That is right.

"The Court: You were indicted by a Grand Jury of this county on July 26th of this year, charged with the offense of forgery. Are you ready for trial?

"Mr. Parker: Yes, sir.

"The Court: Do you want a trial by jury or without a jury?

"Mr. Parker: Well, it is immaterial to me, judge. I don't have any attorney.

"The Court: Well, you are going to have to make up your mind. It is certainly immaterial to the court.

"Mr. Parker: I guess a jury then.

"The Court: You want a trial by jury?

"Mr. Parker: Yes, sir.

"The Court: Do you have a lawyer hired?

"Mr. Parker: No, sir, I don't.

"The Court: The law does not require the Court to appoint an attorney to represent a defendant where he has a trial by jury and it is not the practice of this Court to appoint any attorney to represent the defendant. It is up to him to arrange for his own counsel. Now, if you are eligible for a suspended sentence, why, then, the Court would get some lawyer to advise you about the procedure in filing your application for a suspended sentence but only for that part and only if you are eligible for a suspended sentence. If you are not qualified to get a suspended sentence, there would not be any sense in applying for it.

"Mr. Parker: No.

"The Court: If you want to apply for a suspended sentence, you let me know and I will arrange for a lawyer to help you with that part only.

"Mr. Parker: I will not apply for any suspended sentence.

"The Court: All right. I believe you said you were ready for trial.

"Mr. Parker: Yes, sir.

\* \* \* \* \*

"The Court: Mr. Parker, how do you plead to the indictment, guilty or not guilty?

"Mr. Parker: Not guilty."

4. Parker v. State, Tex.Cr.App., 276 S.W. 2d 533.

5. "Petitioner would further show that prior to, at the time of, and at present, he was under care of doctors, and was

of forgery, admitting, however, that he was guilty of the offense of passing a forged instrument.[6] The application for habeas corpus was denied by the State Court and application for certiorari was denied by the United States Supreme Court, 350 U.S. 971, 76 S.Ct. 444, 100 L.Ed. 843.

■ In his appeal from the order of the court below denying issuance of the writ of habeas corpus,[7] appellant relies on two points: "because of petitioner's physical condition, continuance of the case was requested which was promptly denied by the trial court;" and that petitioner "then asked the trial judge to appoint an attorney to defend him as he was without funds to employ a lawyer;" it being contended that both of these actions taken by the Texas trial court were in violation of appellant's constitutional rights. He does not argue in his brief the point stressed in his motion for a new trial and in the various proceedings conducted by him in the Texas Courts, that the verdict was contrary to the evidence. This last point will not be considered further, therefore, because it is palpably without merit and because it has been abandoned.

■ Nor is there any show of merit in appellant's claim based upon his physical condition. As far as we can tell from this long and confused record, appellant never made the contention, until his brief before this Court, that he requested a continuance of the case because of his physical condition. In all other instances he had been content merely to stress the fact that his health was bad. The transcript of the trial proceedings does not show that appellant ever advised the court before whom he was being tried that he was physically incapacitated, or that he ever asked any continuance or any other relief based thereon. He did place on the stand several lay witnesses for whom he had worked. Some said that he was ill at times, others that he showed no sign of illness. All of them testified that he always put in a full day's work when he was working for them.

The state judge who tried appellant certified that he seemed in full possession of faculties, and that, otherwise, he would not have proceeded with the trial.[8]

In his brief before us on the contention that the failure of the court to furnish him an attorney violated his constitutional rights, appellant claims that he requested the appointment of an attorney. An examination of the record fails to reveal that such a contention was made in the various other pleadings, arguments and statements made before the

under constant strain, therefore his physical and mental condition was such that it would be impossible for him to intelligently defend himself, even if he were versed in the intricate operations of the law. He was denied his right of appeal since he did not know the proper procedure of entering an appeal * * *."

6. "Petitioner should not have been tried for the offense of forgery. The offense of passing a forged instrument would have been proper, and petitioner would have pled guilty to a charge of that nature. Forgery and the passing of a forged instrument are two separate, individual charges with different penalties, therefore where petitioner was tried on one, (forgery) and evidence all points to the effect that he was not guilty of forgery and no mention is made in the indictment of the charge of passing a forged instrument, petitioner was tried

without due process of law, and it constitutes a reversible error."

7. The court below declined also to issue a certificate of probable cause but, after the record was filed in this Court, the panel of judges then sitting granted, on December 11, 1957, such a certificate.

8. These are the words of the judge's certificate, cf. 28 U.S.C.A. § 2245:
"It is my opinion that throughout the trial the defendant was in full possession of his mental faculties and well understood all of the proceedings and I did not discern any indication of any physical ailment that might have handicapped him in any way. If I had observed any evidence indicating that the defendant was handicapped either mentally or physically, the case would not have been tried at that time, irrespective of any request for postponement by the defendant."

Texas Courts. The record of the trial, pertinent portions of which are copied in footnote 3, supra, does not disclose any request by appellant that counsel be appointed to represent him.

█ The question, therefore, comes down to whether the State of Texas was bound, under the Fourteenth Amendment, to provide a lawyer to represent appellant in his trial before the jury. The State of Texas furnishes legal representation only to those charged with capital offenses.[9] That Texas is not alone in its practice is shown in the decision of the Supreme Court of the United States in Betts v. Brady, 1942, 316 U.S. 455, 469, 62 S.Ct. 1252, 1261, 86 L. Ed. 1595. In that case the Supreme Court discussed at length whether every person charged with a criminal offense in a state court is entitled to legal representation, and answered the question in the negative. Its conclusion is epitomized in these words: [10]

"This material demonstrates that, in the great majority of the states, it has been the considered judgment of the people, their representatives and their courts that appointment of counsel is not a fundamental right, essential to a fair trial. On the contrary, the matter has generally been deemed one of legislative policy. In the light of this evidence we are unable to say that the concept of due process incorporated in the Fourteenth Amendment obligates the states, whatever may be their own views, to furnish counsel in every such case. Every court has power, if it deems proper, to appoint counsel where that course seems to be required in the interest of fairness."

The concluding paragraph of the opinion (316 U.S. at page 473, 62 S.Ct. at page 1262) reads thus:

"As we have said, the Fourteenth Amendment prohibits the conviction and incarceration of one whose trial is offensive to the common and fundamental ideas of fairness and right, and while want of counsel in a particular case may result in a conviction lacking in such fundamental fairness, we cannot say that the amendment embodies an inexorable command that no trial for any offense, or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel."

The rule of Betts v. Brady was recently considered by the Supreme Court in the light of its subsequent decisions, and the majority of the court adhered to the idea that the concept of due process was "less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights;" and that, in a State Court trial, the absence of legal representation is not fatal to a conviction unless the trial was lacking in "that fundamental fairness essential to the very concept of justice." See Crocker v. State of California, 1958, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448, and Cicenia v. La Gay, 1958, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523, and cf. Gray v. Ellis, 5 Cir., 257 F.2d 159.

A careful examination of the record of appellant's trial and of all of the proceedings which have been had since its conclusion fails entirely to disclose any such unfairness as these cases speak of. On the other hand, it is clear that appellant was given a fair trial, that no advantage was taken of him, and that he was treated with courtesy and consideration. The judgment of the court below is, therefore,

Affirmed.

RIVES, Circuit Judge (dissenting).

On November 3, 1954, in the District Court of Moore County, Texas, the appellant, George Lee Parker, was adjudg-

---

9. Article 494, Vernon's Code of Criminal Procedure of Texas; Holton v. State, 143 Tex.Cr.R. 415, 158 S.W.2d 722, certiorari denied 316 U.S. 703, 62 S.Ct. 1311, 86 L.Ed. 1771; Ex parte Hope, 154 Tex. Cr.R. 456, 228 S.W.2d 171.

10. 316 U.S. at pages 471–472, 62 S.Ct. at page 1595.

ed guilty of forgery and was sentenced to be confined in the State Penitentiary for a term of not less than two years nor more than seven years. Without counsel, he appealed on the record with no bills of exception. On March 23, 1955, the Court of Criminal Appeals of Texas, in a very brief opinion, affirmed the judgment of conviction. Parker v. State of Texas, 276 S.W.2d 533. On August 29, 1955, Parker filed in the Court of Criminal Appeals of Texas a petition for habeas corpus alleging among other grounds that he was denied the assistance of counsel, was ill, and due to his physical condition was unable intelligently to defend himself. On September 21, 1955, that Court denied his application for permission to file writ of habeas corpus. On February 27, 1956, the Supreme Court of the United States denied certiorari, 350 U.S. 971, 76 S.Ct. 444, 100 L.Ed. 843. Parker has thus exhausted the remedies available in the courts of Texas as required by 28 U.S.C.A. § 2254.—See Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

On August 31, 1956, Parker filed his application for the writ of habeas corpus in the United States District Court for the Southern District of Texas alleging that he had been denied the assistance of counsel and was unable to defend himself, "that he was 67 years of age, and had been confined to bed with organic heart disease almost constantly since March, 1953, and had been treated at Moore County Jail, from one to four times per week, by Doctor O. J. Richardson of Dumas, Texas from August 27 to November 3, 1954, and at trial was suffering from extreme 'dizzy spells' and in no way in position to obtain justice." The district court called upon the State of Texas and O. B. Ellis, General Manager of the Texas Prison System to answer Parker's petition. The issues framed by the petition, answer, and Parker's replication were thus stated by the district court in its order of October 8, 1956:

"The issues of law and facts are thereby presented of whether Park-

er is in custody in violation of the Constitution, Laws, or Treaties of the United States (Section 2241(c)(3), Title 28, U.S.C.A.), in that at his trial in the State Court:

"(a) He was not represented by counsel.

"(b) He was (as he claims) sick when tried.

"(c) The evidence (as he claims) was insufficient to support his conviction."

The district court ordered: "That the evidence in this matter be taken by November 5, 1956, under Section 2246, Title 28, U.S.C.A., by deposition and affidavit, etc."

Parker was not represented by counsel, nor was he present at any hearing of his petition for habeas corpus. He was not advised and did not take advantage of his right under said Section 2246 "to propound written interrogatories to the affiants," etc.

The stenographic transcript of the testimony upon Parker's trial for forgery shows that he was not represented by counsel, and that the trial court advised him as shown in footnote 3 to the majority opinion.

The indictment charged Parker with the forgery of only *one* check and that was in the amount of $38.00. The first witness for the prosecution was Elzy Quattlebaum, the son of Phoebia Quattlebaum, who testified that he did not sign nor authorize the signature to any of *seven* checks purporting to be signed "Phoebia Quattlebaum by Elzy Quattlebaum." The checks were in small amounts, the smallest $25.00 and the largest $55.00, and aggregated only $252.15. Each of the checks was payable to G. L. Parker, the appellant, by name and was endorsed by G. L. Parker. One bore his address. There was obviously no attempt to conceal Parker's actions. The jury could not have known from Elzy Quattlebaum's testimony that he had any family connection with Parker; in fact, he left the contrary impression:

"Q. You know G. L. Parker, don't you? A. I know of him.

"Q. Well, he is the defendant sitting here, isn't he? A. I think so."

It now appears from an affidavit of Maggie Parker:

"That, she is a sister of Elzie Quattlebaum, and the wife of George Lee Parker, ever since the month of May 1909, and

"That, for several years her brother, Elzie, has been a bitter enemy of her husband, Geo. L. Parker, against whom her Bro., Elzie, became the complaint, witness on on, apparently, tromped up charge of forgery in the Disct. Court in Moore County, Texas, and

"That, the Bank account, at Cheyenne, Okla. on which the controversial check was drawn was in her Mothers name, Mrs. Phoebia Quattlebaum, not in her Bro. Elzie Quattlebaum, the prosecuting witness against her husband."

Mrs. Phoebia Quattlebaum did not testify against her son-in-law, Parker, nor has she testified in any of the proceedings following his conviction. A reading of the testimony upon Parker's trial for forgery shows that he badly needed counsel. He did not cross-examine any one of the four state witnesses, except for a brief cross-examination of the one rebuttal witness. He did not testify in his own behalf, nor did he ever prove his family connection with the Quattlebaums.

John Easley, the Sheriff of Moore County, Texas, in answer to a question by counsel for the State, testified:

"Q. Mr. Parker has been in ill health, somewhat, hasn't he? A. Yes, sir, he has been in very ill health. I have had to buy him medicine and had to take him up and give him shots. I believe the doctor says he has heart trouble."

Four of the character witnesses introduced by Parker adverted to his ill health. The last one worked with Park-er at a county swimming pool. "We worked at the swimming pool. He was sick and I knew he was sick and barely getting around * * *."

As its closing witness in rebuttal, the State recalled Sheriff Easley. Without any objection on behalf of Parker, he was permitted to testify as follows:

"Q. Mr. Easley, I will ask you whether or not there is at this time another indictment pending against this defendant, George Lee Parker? A. Yes, sir, there is.

"Q. And, that is another forgery case? A. Yes, sir.

"Q. Mr. Easley, I will ask you whether or not you have received the record from the FBI on Mr. Parker? A. Yes, sir, I have.

"Q. Do you have it there in your hand? A. Yes, sir, I have it here.

"Q. I will ask you to refer to it to refresh your memory and tell us how many times that indicates he has been in the penitentiary in connection with forged checks or fictitious checks? A. I believe seven times he has been in the penitentiary for bogus and forged checks.

"Q. That was in what state? A. Arkansas and Oklahoma, I believe, and also—

"Q. And, I think you said seven times. Would you refer to that again and tell us how many times he has been in the penitentiary regardless of the cause? A. Nine times. The first time he went was 1922 for removal of mortgaged property and then there was one other time there. It is either eight or nine times—I believe it is nine altogether and one of those was for disposing of mortgaged property in 1922.

"Q. What was the last time he was sentenced to the penitentiary? A. 1948—the 8th month and 29th day.

"Q. What was that charge? A. Forgery.

"Q. And, where was he sent? A. He was sent to Jefferson City,

Missouri and got two years and I believe was paroled after serving some time.

"Q. And, that is approximately when he came to this county. Is that right? A. I don't know when Mr. Parker came to this county.

"Q. Are there any other miscellaneous offenses other than those that you have mentioned—I don't care that you mention them? A. Yes, sir. There has been a drunk charge, I believe, against George one time."

Any person with the slightest experience in the trial of criminal cases would know that after that testimony conviction of the defendant was a foregone conclusion. Further, his conviction was assured not because he was guilty of the offense for which he was indicted, but because, under that testimony, he was an habitual forger, still continuing his criminal career, and under indictment, whether guilty or not, for another offense of forgery. Those were not the issues on which Parker was entitled to be tried.

Upon such a record, it would appear that Parker's efforts to defend himself were little short of farcical. In view of the small amounts of the checks, his family connection with the Quattlebaums, and the open way in which the checks were payable to and endorsed by Parker, it is quite possible that he may have had a defense to the charge of forgery, or at least that mitigating circumstances might have been shown. The record of Parker's trial for forgery shows that he suffered badly from the lack of assistance of counsel, and tends to corroborate his claim of extreme illness.

If Parker was unable to defend himself, his trial without counsel was a mockery of justice and deprived him of due process of law. Betts v. Brady, 316 U.S. 455, 473, 62 S.Ct. 1252, 86 L.Ed. 1595. On that issue, as recognized by the district court, a substantial question of fact was presented. Notwithstanding the provisions of 28 U.S.C.A. § 2246, I think

that the rule in habeas corpus proceedings, as well as in Section 2255 proceedings, is still that: "Where, as here, there are substantial issues of fact as to events in which the prisoner participated, the trial court should require his production for a hearing." United States v. Hayman, 1952, 342 U.S. 205, 223, 72 S.Ct. 263, 274, 96 L.Ed. 232.

Indeed, the statute itself plainly so requires: "Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained." 28 U.S.C.A. § 2243.

Of that provision, the Reviser's Note states: "The fifth paragraph providing for production of the body of the detained person at the hearing is in conformity with Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830." 28 U.S.C.A. § 2243, Reviser's Note, page 458.

This was commented on in footnote 38 to United States v. Hayman, supra, 342 U.S. at page 222, 72 S.Ct. at page 274.

The statute further provides:

"A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C.A. § 2243.

On the showing made, I think that Parker is entitled to issuance of the writ or to a show cause order, and to a hearing on the merits at which he should be present. Further, in its discretion and in order to assure justice, I think that the district court should offer Parker the assistance of counsel upon such hearing. I therefore respectfully dissent.

Rehearing denied: RIVES, Circuit Judge, dissenting.