Owens v. State—Syllabus.

THOMAS B. OWENS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed May 28, 1913.

1.  Under the statute where the evidence would have supported a verdict of murder in the first degree, a verdict of murder in the second degree sustained by the trial court will not be set aside by the appellate court on the ground that the verdict is not supported by the evidence.

2.  Where O. is charged with the murder of W. thinking he was M., and there is evidence tending to support the charge, testimony as to threats made by O. against M. is admissible.

3.  Hearsay and irrelevant testimony is properly excluded.

4.  The wide latitude allowed in criminal prosecutions in offering testimony in cases of merely circumstantial evidence, may not be appropriate when the evidence of guilt is not entirely circumstantial.

5.  Technical errors in the admission or rejection of testimony will not cause a reversal where it is clear the supposed errors are harmless.

6.  Where a defendant testifies that he made a certain communication to another, it is not error to allow proper cross examination as to the nature and character of the communication.

7.  It is not error to refuse charges already in effect given.

8.  Where there is substantial evidence to support a verdict, and it does not appear that the jury were not governed by the evidence, the verdict will not be disturbed, no material errors of law or procedure appearing in the record.

Writ of error to the Circuit Court of Jackson County.

Judgment affirmed.

*Smith* & *Davis* and *Avery* & *Price,* for Pliantiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* for the State.

WHITFIELD, J.—An indictment in two counts charged that (1) Thomas B. Owens did by shooting "unlawfully kill one William E. Wester, a human being, ................................ from and with a premeditated design to effect the death of the said William E. Wester;" and that (2) Owens did "unlawfully kill one William E. Wester, a human being, by then and there unlawfully and from and with a premeditated design to effect the death of one A. J. McMillan, Jr., a human being, shooting the said William E. Wester, under the belief at the time of such shooting that the said Wiliam E. Wester was then and there the said A. J. McMillan, Jr." The defendant was found guilty of murder in the second degree on the second count, and took writ of error.

The statutes relating to the subject are as follows:

"The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery or burglary, shall be murder in the first degree, and shall be punishable with death. When perpetrated by any act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, it shall be murder in the second degree and shall be punished by imprisonment in the State prison for life." Sec. 3205, Gen. Stats. of 1906.

"In all criminal prosecutions hereafter begun in this
State if the defendant be found guilty of an offense
lesser in degree, but included within the offence charged
in the indictment or information, such verdict shall not
be set aside by the court, upon the ground that such ver-
dict is contrary to the evidence, if the evidence pro-
duced in such case would have supported a finding, or
if such court would have sustained a verdict of guilty
of the greater offence." Sec. 4007, Gen. Stats. of 1906.

The accused was convicted of murder in the second
degree under a charge of murder in the first degree for
the unlawful killing of *Wester* from a premeditated de-
sign to effect the death of *McMillan*. If the evidence
would have supported a verdict of murder in the first
degree under the second count, *viz.*: the alleged unlawful
killing of Wester from a premeditated design to kill Mc-
Millan, then under the statute the verdict finding the ac-
cused guilty of murder in the second degree under the
second count, should not be set aside by the court, upon
the ground that the verdict is contrary to the evidence.

It appears that Wester was fatally shot about two
o'clock P. M. in a swamp near a barrel of spirits of tur-
pentine which the searching party had found and which
Wester was guarding. The evidence indicates that cot-
ton and turpentine had been stolen from the Georgia
side of the Chattahoochee river and that parties, among
them being McMillan, had been searching for the stolen
articles on the Florida side of the river at or near Hay-
wood's Landing where Owens had a store. There is
evidence that Owens had some days before said he was
willing for others to search his place for stolen articles,
but if McMillan came on the place for that purpose, he,
Owens, would kill him. It is in the evidence that on the
morning of the homocide Wester, McMillan, a Mr. Mar-

chant and Isham Smith, a negro, came across the river to Haywood's Landing, and engaged in searching the swamp on the Florida side for stolen articles. McMillan saw Owens at his place of business near the landing, on the morning of the homicide, but it is not shown that Owens saw McMillan. Owens denies that he saw McMillan, but says he saw Marchant and Isham Smith in the afternoon of the day. As Owens was charged with killing Wester thinking he was McMillan, and as there was evidence tending to support the charge, testimony as to threats made by Owens against McMillan was admissible.

A witness for the defendant, a deputy sheriff, testified that after the homicide there were armed men in the neighborhood, and a Mr. Bennett asked him to get the men to leave his place. There was no error in striking this latter testimony as it does not appear to have been connected with the flight of Owens after the homicide. On the record no error appears in the ruling excluding a question asked the deputy sheriff whether he had received a message from Owens before he left the county stating that he was ready to surrender if the crowd would go away.

The testimony of a witness as to what a person had said in the presence of the witness about another person having killed Wester and the denial thereof by the person accused was properly stricken, it being merely hearsay evidence.

A witness without objection testified that he lived a mile and a half from Haywood's Landing, and that a Mr. Martin and one Mike Davis came to his house about supper time that night before the homicide to get him to haul a barrel of spirits. There was a subsequent prof-

fer to prove that the parties mentioned wanted witness "to move a barrel of spirits from out of the swamp," the theory of the proffer being to show that Owens had nothing to do with the barrel of spirits that had been found in the swamp which Wester was guarding when he was shot, but that Martin, Mike Davis and Eugene Collier were the persons interested in the barrel of spirits. The fact that the night before the homicide Martin and Davis asked the witness to move a barrel of spirits for them was testified to without objection, and this being the main circumstances sought to be established, the defendant could not have been harmed by the exclusion of further testimony on this line even if the proffer was sufficiently definite to be admissible and there was a possible technical error in excluding it. The evidence of the defendant's guilt was not circumstantial alone, so the wide latitude allowed when the evidence is merely circumstantial is not appropriate in this case. Martin had disappeared and Davis had died, but Collier testified to the commission of the crime by Owens, and the probative force of his testimony was for the jury to determine.

An objection made to a preliminary question asked the defendant on cross-examination as to whether he made a certain statement to the sheriff, was overruled. The question did not relate to matters testified to on the direct examination, but the defendant without objection subsequently testified fully as to the matter and was not contradicted by anyone, though the sheriff afterwards testified in the case. Under the facts and circumstances disclosed by the record no harm could reasonably have resulted to the defendant from the ruling complained of even if it be technical error.

The defendant testified that he had communicated with the sheriff about surrendering to the officer, and

it was not error to cross-examine the defendant as to the nature and character of the communications.

Appropriate charges as to the burden of proof and presumption of innocence were given and there was no error in refusing special charges requested when they had been in substance already given.

There is positive testimony of the defendant's guilt, the weight and credibility of which, as well as the conflicts in the evidence have been determined by the jury. As there is substantial evidence to sustain the verdict, and as it does not appear that the jury were not governed by the evidence, the verdict will not be disturbed, there being no material errors of law in the record.

The judgment is affirmed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.