CARNLEY *v.* COCHRAN, CORRECTIONS DIRECTOR.

No. 158.   Argued February 20–21, 1962.—Decided April 30, 1962.

By appointment of the Court, 368 U. S. 806, *Harold A. Ward III* argued the cause and filed briefs for petitioner.

*James G. Mahorner,* Assistant Attorney General of Florida, argued the cause for respondent by special leave of Court, *pro hac vice.*   With him on the brief was *Richard W. Ervin,* Attorney General.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The petitioner, who was not afforded the assistance of counsel for his defense at his trial, claims that, for this reason, his conviction by a jury in the Court of Record for Escambia County, Florida, deprived him of rights guaranteed by the Fourteenth Amendment.   He obtained a provisional writ of habeas corpus from the Florida Supreme Court on his petition asserting that claim.

However, that court, on the petition, the respondent's return and the petitioner's reply—but without any hearing—discharged the writ. 123 So. 2d 249. Since an important constitutional right is involved, we granted certiorari and appointed counsel to represent the petitioner in this Court. 366 U. S. 958, 368 U. S. 806.

The assistance of counsel might well have materially aided the petitioner in coping with several aspects of the case. He was charged with the noncapital offenses of incestuous sexual intercourse with his 13-year-old daughter and, in a separate count relating to the same acts, fondling a minor child, that is, assault in a lewd, lascivious, and indecent manner, upon a female child under the age of 14. At the time of trial two sets of Florida criminal statutes contained language reaching such behavior. Sections 741.22 and 800.04, Florida Statutes, 1959, were general criminal provisions separately defining the two offenses of incest and assault in a lewd, lascivious, and indecent manner. In addition, both offenses were included within the later enacted Chapter 801 of the Florida Statutes— Florida's so-called Child Molester Act—if the victim was 14 years of age or younger.[1] The Florida Supreme Court

---

[1] Fla. Stat., 1959, § 741.22:

"Punishment for incest.—Persons within the degrees of consanguinity within which marriages are prohibited or declared by law to be incestuous and void, who intermarry or commit adultery or fornication with each other, shall be punished by imprisonment in the state prison not exceeding twenty years, or in the county jail not exceeding one year."

Fla. Stat., 1959, § 800.04:

"Lewd, lascivious or indecent assault or act upon or in presence of child.—Any person who shall handle, fondle or make an assault upon any male or female child under the age of fourteen years in a lewd, lascivious or indecent manner, or who shall knowingly commit any lewd or lascivious act in the presence of such child, without intent to commit rape where such child is female, shall be deemed guilty of

plainly conceived the petitioner's prosecution for both offenses as having been under the Child Molester Act. 123 So. 2d, at 250. While that is an obviously plausible view, a lawyer, but not a layman, might have perceived that because the Child Molester Act was invoked against the petitioner in respect of conduct elsewhere specifically defined as criminal, the 1954 decision of the Florida Supreme Court in *Copeland* v. *State,* 76 So. 2d 137, raised doubts, under the Florida Constitution, of the validity of a prosecution based on the Act.[2] The picture is further complicated by the fact that the Child Molester Act had included no reference to incest prior to an amendment made subsequent to the petitioner's alleged offense.[3]

Establishing the basis of the petitioner's prosecution was vitally important for the protection of his rights. If the Child Molester Act was validly applied against the

a felony and punished by imprisonment in the state prison or county jail for not more than ten years."

Fla. Stat., 1959, § 801.02:

"Definitions.—An offense under the provisions of this chapter shall include attempted rape, sodomy, attempted sodomy, crimes against nature, attempted crimes against nature, lewd and lascivious behavior, incest and attempted incest, assault (when a sexual act is completed or attempted) and assault and battery (when a sexual act is completed or attempted), when said acts are committed against, to or with a person fourteen years of age or under."

[2] In the *Copeland* case, *supra,* the Florida Supreme Court held that the inclusion of rape in the Child Molester Act—with its attendant alteration in the consequences of that offense when committed against a child of 14 or younger—ran afoul of the State Constitution because the Act embraced 11 distinct crimes separately dealt with in other statutes, because the Act failed to set forth at length the general rape provisions which were *pro tanto* amended, and because the title of the Act failed to give notice that the consequences of rape had been changed. But see *Buchanan* v. *State,* 111 So. 2d 51, in which the District Court of Appeal upheld the Child Molester Act as applied to lewd and lascivious conduct.

[3] Florida Laws, E. S. 1957, c. 57–1990.

petitioner, counsel could have materially assisted him by invoking on his behalf the special provisions of that law governing the disposition of defendants charged under it. Sections 741.22 and 800.04 authorize only jail sentences. In contrast, the Child Molester Act empowers the sentencing judge in a proper case to commit the convicted defendant to a Florida state hospital for treatment and rehabilitation.[4] That law also permits the accused to

---

[4] Fla. Stat., 1959, § 801.03 (1):

"Powers and duties of judge after convictions.—

"(1) When any person has been convicted of an offense within the meaning of this chapter, it shall be within the power and jurisdiction of the trial judge to:

"(a) Sentence said person to a term of years not to exceed twenty-five years in the state prison at Raiford.

"(b) Commit such person for treatment and rehabilitation to the Florida state hospital, or to the hospital or the state institution to which he would be sent as provided by law because of his age or color provided the hospital or institution possesses a maximum security facility as prescribed by the board of commissioners of state institutions. When, as provided for in this law, there shall have been created and established a Florida research and treatment center then the trial judge shall, instead of committing a person to the Florida state hospital, commit such person instead to the Florida research and treatment center. In any such case the court may, in its discretion, stay further criminal proceedings or defer the imposition of sentence pending the discharge of such person from further treatment in accordance with the procedure as outlined in this chapter."

Fla. Stat., 1959, § 801.08:

"Execution of judgment may be suspended; probation; requirements.—

"(1) The trial judge under whose jurisdiction a conviction is obtained may suspend the execution of judgment and place the defendant upon probation.

"(2) The trial court placing a defendant on probation may at any time revoke the order placing such defendant on probation and impose such sentence or commitment as might have been imposed at the time of conviction.

petition for a psychiatric or psychological examination for the purpose of assisting the court in the trial of the case.[5]

There are thus present considerations of a sort often deemed sufficient to require the conclusion that a trial for crime without defense counsel did not measure up to the requirements of the Fourteenth Amendment. See, e. g., Chewning v. Cunningham, 368 U. S. 443, 446–447; Reynolds v. Cochran, 365 U. S. 525, 531–532; McNeal v. Culver, 365 U. S. 109, 114–116; Rice v. Olson, 324 U. S. 786, 789–791.

Other aspects of this record also support petitioner's claim of the unfairness of trying him without affording him the help of a lawyer. As must generally be the case, the trial judge could not effectively discharge the roles of both judge and defense counsel. Here the record shows that the trial judge made efforts to assist the petitioner, but there were important omissions in the guidance he gave. He did not fully apprise the petitioner of vital

---

"(3) No defendant shall be placed on probation or continue on probation until the court is satisfied that the defendant will take regular psychiatric, psychotherapeutic or counseling help, and the individual helping the defendant shall make written reports at intervals of not more than six months to the court and the probation officer in charge of the case. The costs, fees and charges for treatment of a defendant on probation shall not be a charge of the county where the defendant was tried."

[5] Fla. Stat., 1959, § 801.10:

"Examination; petition for, court order.—When any person is charged with an offense within the purview of this chapter, said person may petition the court for a psychiatric and psychological examination as heretofore set out and the written report shall be filed with the clerk of the court having jurisdiction of the offense for the purpose of assisting the court in the trial of the case. The court may, of its own initiative, or upon petition of an interested person, order such examination and report as heretofore set out."

procedural rights of which laymen could not be expected to know but to which defense counsel doubtless would have called attention. The omissions are significant. See, *e. g., Cash* v. *Culver,* 358 U. S. 633, 637–638; *Gibbs* v. *Burke,* 337 U. S. 773, 776–778; *Hudson* v. *North Carolina,* 363 U. S. 697, 702–703. Despite the allegation in respondent's return that "the petitioners were carefully instructed by the trial court with regard to the rights guaranteed by both the *Constitution of Florida* and the *Constitution of the United States* [6] and with regard to the procedures to be followed during the course of the trial," it appears that, while petitioner was advised that he need not testify, he was not told what consequences might follow if he did testify. He chose to testify and his criminal record was brought out on his cross-examination. For defense lawyers, it is commonplace to weigh the risk to the accused of the revelation on cross-examination of a prior criminal record, when advising an accused whether to take the stand in his own behalf; for petitioner, the question had to be decided in ignorance of this important consideration. Nor does it appear that the trial judge advised the petitioner of his right to examine prospective jurors on *voir dire,* or of his right to submit proposed instructions to the jury, or of his right to object to the instructions that were given.

Other circumstances attending this case only serve to accentuate the unfairness of trial without counsel. Petitioner is illiterate. He did not interpose a single objection during the trial. The only two witnesses against him were his daughter and a 15-year-old son. Although both petitioner and his wife testified that they had experienced disciplinary problems with the children, and thus clearly revealed a possibly significant avenue for impeachment of

[6] Emphasis in original.

the children's testimony, there was no cross-examination worthy of the name.[7]

We hold that petitioner's case was one in which the assistance of counsel, unless intelligently and understand-

---

[7] The wife testified: "We tried to be firm with them, but it seemed like the more firm we got, these two older kids, they couldn't stand the pressure, so they would, every time that their Daddy would get after them or something or other about some of their doings, well, that oldest boy would say, 'Well, Daddy, you will sure regret it. I will get even with you one way or the other,' and also the girl would get mad and flirtified and she would almost have the same opinion."

The entire cross-examination of both witnesses by petitioner and by his wife, who was a codefendant, is as follows:

"CROSS EXAMINATION BY MR. WILLARD CARNLEY:

"Q. Carol Jean, you say your mother, she went and made arrangements to get the casket for your sister?

"A. Yes.

"Q. You are right sure now that she did?

"A. I am sure.

"Q. Well, I will tell the Court, my wife was out at Mr. Joe Gayfer's house—

"THE COURT: Wait a minute, sir, you are testifying. You will have a chance to testify when the State rests. Any questions you wish to ask your daughter, you are welcome to do it.

"CROSS EXAMINATION BY MRS. PEARL CARNLEY:

"Q. Carol Jean, don't you recall after you got age of maturity that Mother tried to tell you right from wrong and always teach you right from wrong?

"A. Yes, you have taught me right from wrong.

"THEREUPON the witness was excused."

"CROSS EXAMINATION BY MRS. CARNLEY:

"Q. J. W., at this period of time, did you realize whenever we was up there at Century of your Dad's sickness from the time we moved up there until it was springtime, and after he was sick from his stomach that he taken a serious attack down by reason of his employment?

"A. Yes, I realize he said he was sick. He was supposed to be sick. I know that.

"THEREUPON the witness was excused."

ingly waived by him, was a right guaranteed him by the Fourteenth Amendment.

We must therefore consider whether the petitioner did intelligently and understandingly waive the assistance of counsel. The record does not show that the trial judge offered and the petitioner declined counsel. Cf. *Moore* v. *Michigan,* 355 U. S. 155, 160–161. Nevertheless, the State Supreme Court imputed to petitioner the waiver of the benefit of counsel on a ground stated in the court's opinion as follows: "If the record shows that defendant did not have counsel . . . , it will be presumed that defendant waived the benefit of counsel . . . ." 123 So. 2d, at 251. This might mean that the petitioner could have suffered no constitutional deprivation if he had not formally requested counsel, and that failure to make such a request is to be presumed unless the record shows the contrary. But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.[8] In *McNeal* v. *Culver, supra,* the petitioner's allegation that he had requested counsel was countered by a denial in the return that "petitioner's constitutional rights were violated by the court's alleged refusal to appoint counsel in his behalf," and the State Supreme Court noted that the record was silent as to any request. We held that when the Constitution grants protection against criminal proceedings without the assistance of counsel, counsel must be furnished "whether or not the accused requested the appointment of counsel. *Uveges* v. *Pennsylvania,* 335 U. S. 437, 441." 365 U. S., at 111, n. 1. See *Rice* v. *Olson, supra,* at 788; *Gibbs* v. *Burke, supra,* at 780.

---

[8] For this reason, there is no occasion to hold a hearing in this case to settle the fact issue raised by the petition and return as to whether the petitioner requested counsel.

However, the Florida Supreme Court may not have meant that the constitutional right to counsel depends upon a formal request. The court may have meant that from the very fact that no counsel was present, it would be assumed that the trial judge made an offer of counsel which the petitioner declined.[9] Or, it may have meant that it would assume simply that petitioner knew of his right to counsel and was willing to forego it. Of course, the validity of such presumptions is immediately called in question because the accused has no way of protecting against them during his trial except by requesting counsel—a formality upon which we have just said his right may not be made to depend. Nor is it an answer to say that he may counter such presumptions on collateral attack by showing—if he can—that he had not in fact agreed, or been willing, to be tried without counsel. To cast such a burden on the accused is wholly at war with the standard of proof of waiver of the right to counsel which we laid down in *Johnson* v. *Zerbst,* 304 U. S. 458, 464–465:

> "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'

> .    .    .    .    .

> "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty

---

[9] Or that the trial judge was justified in believing that the accused knew perfectly well of his right to counsel, and that it was unnecessary to make an explicit offer and to secure the accused's rejection of the offer.

responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."

We have held the principles declared in *Johnson* v. *Zerbst* equally applicable to asserted waivers of the right to counsel in state criminal proceedings. In *Rice* v. *Olson, supra,* the petitioner had pleaded guilty to a burglary charge. He did not claim that he had requested counsel, but alleged that he had not been advised of his right to the assistance of counsel and that he had not waived that right. In affirming the denial of relief, the State Supreme Court wrote that " 'It is not necessary that there be a formal waiver; and a waiver will ordinarily be implied where accused appears without counsel and fails to request that counsel be assigned to him, particularly where accused voluntarily pleads guilty.' " We held that even when there had been a guilty plea such an implication, treated as a conclusive presumption, was "inconsistent with our interpretation of the scope of the Fourteenth Amendment," and that "A defendant who pleads guilty is entitled to the benefit of counsel, and a request for counsel is not necessary." 324 U. S., at 788. However, we recognized in *Rice* v. *Olson* that, although the Fourteenth Amendment would not countenance any presumption of waiver from the appearance of the accused without counsel and the silence of the record as to a request, the entry of the guilty plea might have raised a fact issue as to whether the accused did not intelligently and understandingly waive his constitutional right. We held that a hearing was required since the facts were in

dispute. In the present case, however, there was no guilty plea, and the return to the writ does not allege an affirmative waiver.[10] Therefore, there is no disputed fact question requiring a hearing. Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

Neither *Bute* v. *Illinois*, 333 U. S. 640, nor *Moore* v. *Michigan, supra,* is in any way inconsistent with our holding and disposition here. In *Bute,* in which the petitioner pleaded guilty without having requested counsel, it was alleged that he had not been advised of his right to counsel. The Court held that there had been no denial of a constitutional right, but it expressly disclaimed a waiver rationale. It decided simply that the nature of the charge and the circumstances attending the reception of the guilty plea, as recited in that record, were not such as to call into play any constitutionally protected right to counsel. In *Moore,* the record showed clearly that the petitioner had expressly declined an offer of counsel by the trial judge, and we held that the accused had to show by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to amount to an effective waiver. But no such burden can be imposed upon an accused unless the record—or a hear-

---

[10] Petitioner's allegation that he requested counsel is, obviously, tantamount to a denial of waiver. The return's denial of a request is not, however, for reasons already canvassed, the equivalent of an allegation of waiver.

The return alleged that the trial judge instructed petitioner as to his constitutional rights, but this allegation claimed support in the transcript, inspection of which reveals no instruction as to any constitutional right except the right not to testify.

ing, where required—reveals his affirmative acquiescence. Where, as in this case, the constitutional infirmity of trial without counsel is manifest, and there is not even an allegation, much less a showing, of affirmative waiver, the accused is entitled to relief from his unconstitutional conviction.

The judgment of the Florida Supreme Court is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE HARLAN concurs in the result.

MR. JUSTICE FRANKFURTER took no part in the decision of this case.

MR. JUSTICE WHITE took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, concurring.

I concur in the Court's judgment of reversal and agree for the reasons stated in its opinion that petitioner was, even under the constitutional doctrine announced in *Betts* v. *Brady,* 316 U. S. 455, entitled to be represented by counsel. That case, decided in 1942, held that an indigent defendant charged with crime in a state court did not have a right under the Federal Constitution to be provided with counsel unless this Court could say "by an appraisal of the totality of facts in a given case" that the refusal to provide counsel for the particular defendant constituted "a denial of fundamental fairness, shocking to the universal sense of justice . . . ." *Id.,* at 462. I dissented from the Court's denial of counsel and its announcement of what I considered to be such an impossibly vague and unpredictable standard. Among other

grounds I thought the defendant in that case entitled to counsel because of my belief that the Fourteenth Amendment makes applicable to the States the Sixth Amendment's guarantee that "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." That is still my view.

Twenty years' experience in the state and federal courts with the *Betts* v. *Brady* rule has demonstrated its basic failure as a constitutional guide.   Indeed, it has served not to guide but to confuse the courts as to when a person prosecuted by a State for crime is entitled to a lawyer.   Little more could be expected, however, of a standard which imposes upon courts nothing more than the perplexing responsibility of appointing lawyers for an accused when a trial judge believes that a failure to do so would be "shocking to the universal sense of justice."   To be sure, in recent years this Court has been fairly consistent in assuring indigent defendants the right to counsel.   As the years have gone on we have been compelled even under the *Betts* rule to reverse more and more state convictions either for new trial or for hearing to determine whether counsel had been erroneously denied [1]—a result that in my judgment is due to a growing recognition of the fact that our Bill of Rights is correct in assuming that no layman should be compelled to defend himself in a criminal

---

[1] *Chewning* v. *Cunningham,* 368 U. S. 443; *Hamilton* v. *Alabama,* 368 U. S. 52; *McNeal* v. *Culver,* 365 U. S. 109; *Hudson* v. *North Carolina,* 363 U. S. 697; *Cash* v. *Culver,* 358 U. S. 633; *Moore* v. *Michigan,* 355 U. S. 155; *Herman* v. *Claudy,* 350 U. S. 116; *Massey* v. *Moore,* 348 U. S. 105; *Gibbs* v. *Burke,* 337 U. S. 773; *Uveges* v. *Pennsylvania,* 335 U. S. 437; *Townsend* v. *Burke,* 334 U. S. 736; *Wade* v. *Mayo,* 334 U. S. 672; *Marino* v. *Ragen,* 332 U. S. 561; *De Meerleer* v. *Michigan,* 329 U. S. 663; *Tomkins* v. *Missouri,* 323 U. S. 485; *Williams* v. *Kaiser,* 323 U. S. 471.   But cf. *Quicksall* v. *Michigan,* 339 U. S. 660; *Gryger* v. *Burke,* 334 U. S. 728; *Bute* v. *Illinois,* 333 U. S. 640; *Foster* v. *Illinois,* 332 U. S. 134.

prosecution. But all defendants who have been convicted of crime without the benefit of counsel cannot possibly bring their cases to us. And one need only look at the records of the right-to-counsel cases since *Betts* v. *Brady* in both state and federal courts to understand the capriciousness with which the "shocking to the universal sense of justice" standard bestows its protection upon persons accused of crime.[2] I think that now is the time to abandon this vague, fickle standard for determining the right to ·counsel of a person prosecuted for crime in a state court. We can do that by recognizing that defendants in state courts have by reason of the Fourteenth Amendment the same unequivocal right to counsel as defendants in federal courts have been held to have by virtue of the Sixth Amendment. *Johnson* v. *Zerbst,* 304 U. S. 458. For these and many other reasons, including those set out in *McNeal* v. *Culver,* 365 U. S. 109, 117, by MR. JUSTICE DOUGLAS and joined in by MR. JUSTICE BRENNAN, I would overrule *Betts* v. *Brady* in this case. In so doing we would simply return to the holding of this Court in *Powell* v. *Alabama,* 287 U. S. 45, 68–69, where it was stated with reference to prosecution for crime in the state courts that the ". . . right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." I am aware that this statement was made in a capital case, but the Fourteenth Amend-

---

[2] Compare, *e. g., Flansburg* v. *Kaiser,* 55 F. Supp. 959, aff'd on other grounds, 144 F. 2d 917, with *Powell* v. *Alabama,* 287 U. S. 45; *Parker* v. *Ellis,* 258 F. 2d 937, with *Massey* v. *Moore,* 348 U. S. 105; *Henderson* v. *Bannan,* 256 F. 2d 363, with *United States ex rel. Savini* v. *Jackson,* 250 F. 2d 349. Numerous other examples could of course be cited including the contrast between the decisions cited in note 1 and the lower court decisions which they reversed which had held that the denial of counsel had not been erroneous under the *Betts* v. *Brady* rule.

ment protects life, liberty, and property and I would hold that defendants prosecuted for crime are entitled to counsel whether it is their life, their liberty, or their property which is at stake in a criminal prosecution.

THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS, while joining the opinion of the Court, also join this opinion.

MR. JUSTICE DOUGLAS, concurring.

While I join the opinion of the Court and the separate opinion of MR. JUSTICE BLACK, I wish to add a word to the reasons MR. JUSTICE BRENNAN and I gave in *McNeal* v. *Culver*, 365 U. S. 109, 117–119, for overruling *Betts* v. *Brady*, 316 U. S. 455.

Petitioner, an admitted illiterate,* was forced to try his case to a six-man jury. There is no record of the proceedings at which the jury was impaneled. There is nothing to show that petitioner was told of his right to challenge individual veniremen, or the panel as a whole, or that he challenged anyone for cause or exercised any of the six peremptory challenges granted him by Florida law. Fla. Stat., 1959, § 913.08.

It is certain that he could have made no challenge to the panel as a whole. Such challenge must be in writing,

---

*The Florida Supreme Court denied petitioner's application for a writ of habeas corpus without a hearing. With respect to the allegation that both petitioner and his wife were illiterate and unable to defend themselves, the court admitted that the record showed conclusively that they were in fact illiterate. It concluded, however, that illiteracy alone did not necessarily import ignorance of the ordinary things of life, such as how to get money from a bank. Apparently classifying the conduct of a defense to a felony charge as one of the "commonplace things of life," the court concluded there was no showing petitioner or his wife "suffered in the slightest from lack of intelligence." 123 So. 2d 249, 251. (Petitioner's wife joined in the proceedings below, but is not a party to the petition for certiorari.)

Fla. Stat., 1959, § 913.01, and the Florida Supreme Court tells us he could not write. But even if he could, it is doubtful that he would have been able to show an improper method of selection or even discrimination, because he was confined for a lengthy period prior to trial, five months of which were alleged to have been spent in solitary confinement. He did not have an opportunity, therefore, to gather the factual evidence necessary to sustain a possible challenge to the panel. The Florida statute, moreover, explicitly requires that the written challenge specify the facts on which it is based. *Ibid.*

Had petitioner been able to write, and had he access to the facts, he still would not, in all probability, have been able to build a legal argument sufficient to challenge the panel. He is a man of low intelligence. Some of the grounds for challenging the panel that might have been invoked by petitioner turn on difficult questions of state law, as where it is alleged that the legislature has passed a special, or local, law providing for the summoning and impaneling of grand and petit jurors. Article III, § 20, of the Florida Constitution prohibits such "special" laws. It is not always clear, though, whether a particular law is "special" or "general." See, *e. g., Hysler* v. *State,* 132 Fla. 200, 181 So. 350; 132 Fla. 209, 181 So. 354; *State* v. *Pearson,* 153 Fla. 314, 14 So. 2d 565. The sophisticated nature of the arguments necessary to attack a law as "special" would almost always be beyond the comprehension of one unlearned in the law.

In Florida, a plea of abatement is the usual manner of testing the legality of a jury list. In some cases, a proceeding in mandamus has been deemed a proper remedy, as where it is claimed that the county commissioners have erred in the manner in which they selected the panel. *Jackson* v. *Jordan,* 101 Fla. 616, 135 So. 138. Often a simple oral challenge to an individual juror can achieve just as much, as where an accused contends a venireman

does not have the "qualifications required by law." Fla. Stat., 1959, § 913.03 (1). Yet obviously an illiterate cannot be expected to know these niceties of criminal procedure.

Assuming that an accused does decide to challenge prospective veniremen, either peremptorily or for cause, he must then decide how to secure the maximum benefit from his peremptory challenges. Florida statutes provide at least 12 independent grounds for a challenge for cause. Fla. Stat., 1959, § 913.03. Ignorance of a ground for challenge is no defense. *Denmark* v. *State,* 43 Fla. 182, 31 So. 269; *McNish* v. *State,* 47 Fla. 69, 36 So. 176; *Webster* v. *State,* 47 Fla. 108, 36 So. 584. Objections to qualifications of jurors not raised at the trial will not be considered on appeal. *McNish* v. *State, supra; Crosby* v. *State,* 90 Fla. 381, 106 So. 741.

Where the trial court excuses a juror on its own motion, the accused has a right to object. The objection must be timely made, and the grounds therefor clearly stated. It is too late to object once the juror has been excused. *Ellis* v. *State,* 25 Fla. 702, 6 So. 768. On appeal, the accused must be able to show that the action of the court was prejudicial, or constituted an abuse of discretion. *Williams* v. *State,* 45 Fla. 128, 34 So. 279; *Peadon* v. *State,* 46 Fla. 124, 35 So. 204.

The special difficulties facing an accused in a jury trial do not end with challenges to the panel or individual jurors. Florida prohibits the trial judge from commenting on the weight of the evidence, *Lester* v. *State,* 37 Fla. 382, 20 So. 232; *Leavine* v. *State,* 109 Fla. 447, 147 So. 897; *Seward* v. *State,* 59 So. 2d 529, or from expressing an opinion that the accused should be convicted, *Wood* v. *State,* 31 Fla. 221, 12 So. 539, lest he influence the jury in its decision. But if he did make such comment, and the accused took no exception, the error will be deemed waived on appeal (*Surrency* v. *State,* 48 Fla. 59, 37 So.

575; *Smith* v. *State,* 65 Fla. 56, 61 So. 120), except where the interests of justice would not be served. *Kellum* v. *State,* 104 So. 2d 99 (Fla. Ct. App. 3d Dist.).

Hearsay evidence takes on added importance in jury trials. It is excluded if prejudicial. *Owens* v. *State,* 65 Fla. 483, 62 So. 651; *Alvarez* v. *State,* 75 Fla. 286, 78 So. 272. But if admitted without objection, it is generally regarded as having been received by consent. *Sims* v. *State,* 59 Fla. 38, 52 So. 198. An objection after a question has been answered is sometimes held to come too late. *Schley* v. *State,* 48 Fla. 53, 37 So. 518; *Williams* v. *State,* 58 Fla. 138, 50 So. 749; *Sims* v. *State, supra.* Yet a motion to strike may achieve the same result. *Dickens* v. *State,* 50 Fla. 17, 38 So. 909. In a rapid-fire exchange of questions and answers by the prosecution and a witness, a defendant without the assistance of counsel will oftentime find himself helpless to object or even to conceive grounds on which an objection to hearsay will lie. Indeed, what constitutes hearsay is itself a difficult question, on which judges may not always agree. See, *e. g.,* *Royal* v. *State,* 127 Fla. 320, 170 So. 450.

Once the evidence is in, an accused in Florida has the right to have the jury instructed on the law of the case before any final arguments are made. "The Judge's charge following immediately upon the conclusion of the evidence may enable the jury to obtain a clearer and more accurate conception of their duties in the particular case than if they were required to wait until after the argument of counsel to hear the law of the case from the judge." *Smithie* v. *State,* 88 Fla. 70, 76, 101 So. 276, 278. This right is waived by a failure to take exception to the procedure adopted by the court. Defects in the instructions of the court will likewise be deemed waived, where the accused fails to make timely objection. *White* v. *State,* 122 So. 2d 340 (Fla. Ct. App. 2d Dist.); *Williams* v. *State,* 117 So. 2d 473.

Intricate procedural rules are not restricted to criminal trials in Florida. Similar rules, equally as complex and confusing to the layman, may be found in the criminal statutes of the other States. I assume that they might not be applied with the same vigor against a layman defending himself, as they would against one represented by a lawyer. Yet even so, the rule of *Betts* v. *Brady* projected in a jury trial faces a layman with a labyrinth he can never understand nor negotiate.

As a result, the jury system—pride of the English-speaking world—becomes a trap for the layman because he is utterly without ability to make it serve the ends of justice.