David T. Gibbons, J.
Immediately preceding trial, this hearing was conducted to determine (1) the propriety of the prearrest identification procedures employed by the police with respect to the defendant (United States v. Wade, 388 U. S. 218; Gilbert v. California, 388 U. S. 263; Stovall v. Denno, 388 U. S. 293) and (2) whether an alleged oral statement by defendant was voluntarily given (People v. Huntley, 15 N Y 2d 72) and obtained in accordance with the requirements prescribed by Miranda v. Arizona (384 U. S. 436).
*1047 The following are the court’s findings of fact and conclusions of law:
With respect to the identification hearing, the court finds that the People have established by clear and convincing proof that on May 15,1968, at about 8:15 p. m., the complaining witness was alone in his car on Chelsea Avenue in Elmont. The sun had set but it was still light out. Another vehicle, occupied by four people, stopped in front of the complainant’s automobile. One of the occupants, a male, got out and entered the complainant’s car on the passenger side. The visitor sat for three or four minutes, face uncovered, in the passenger seat next to the complainant. Thereafter he went back to the car from which he came without getting into his car. Following this he returned to complainant’s vehicle and placed himself about one foot away from the complainant who was then standing at the driver’s side of his own car. The second confrontation between the complainant and the other individual lasted two minutes. The visitor did something to the complainant, which is the subject of the indictment, on this second occasion, then walked away. The complainant went to the police station a half hour to 45 minutes later, reported the incident and described his assailant as male, white, fair complexion, no beard or mustache, six feet tall, about 170 pounds, with brown curly hair, wearing a three quarter-length brown suede jacket with a wrap-around belt and black pants.
On the next afternoon the complainant returned to the police station and was shown a book with approximately 40 full body and face front view photographs of male persons. The book contained four such photographs to a page and all of the photographs were of different persons. The complainant looked at all the photos in the book, however, he pointed out a photograph on the first page of the book as representing a picture of the person he had encountered the previous day. On this hearing the complainant identified the defendant as the man who came to his car on May 15, 1968 in Elmont and he also identified him as the person whose picture he saw on the first page of the photograph book shown to him by the police. The complainant also identified the defendant as the person he saw at a District Court hearing following the photographic identification at the police station. The complainant’s in-court identification on this hearing was based on his observation of him at the time of the incident in Elmont. The complainant was under the influence of heroin at the time of the alleged incident in Elmont, having taken heroin about six hours previous to his encounter with the defendant. He had also taken heroin on the day he made the *1048 photographic identification. There was no evidence to indicate to the court that the heroin taken by complainant had any influence on his ability to observe and identify the defendant.
The court finds that the complainant at the time of the incident had an opportunity to, and did, in fact, observe the defendant at close range and for a sufficient time to familiarize himself with the defendant’s physical appearance.
Although it is the court’s finding that, on the facts presented on this hearing, complainant’s use of heroin did not impair his ability to observe and identify, this finding is without prejudice to the defendant’s raising the issue for the jury’s determination on the trial of this indictment. In addition, while the court, on this hearing, has permitted reference to complainant’s identification of the defendant by means of photographs for the purpose of determining whether his constitutional rights were in any way impaired (Stovall v. Denno, supra), nevertheless, the court is mindful that such photographs are generally not admissible on the People’s direct case. (People v. Hagedorny, 272 App. Div. 830; People v. Coffey, 11 N Y 2d 142; People v. Jennings, 23 A D 2d 621.) The court makes no finding relative to the admissibility of such photographs at the trial. This question is to be passed upon, if at all, by the trial court in accordance with the factual situation which may develop at the trial.
Turning now to the Huntley and Miranda hearing which followed the identification, hearing, the court finds that on the day following the photographic identification of defendant by the complainant, the defendant was picked up at his home in Elmont and taken into police custody by Detectives Robert Anderson and Ralph Acquasanta, and driven by automobile to the Fifth Precinct Police Station. While en route in the car, Detective Anderson advised the defendant that he was entitled to an attorney, that he did not have to make any statements, anything he did say could be used as evidence against him, that he was entitled to talk to an attorney before he made any statements and if he could not afford an attorney, one would be supplied for him and the Detective would not talk to him until such time as he spoke to such attorney. At that time the Detective also told the defendant that they were taking him to the Fifth Precinct to investigate an assault and robbery in Elmont.
The defendant replied that he did not know what the Detectives were talking about, upon which Detective Anderson changed the subject.
When they arrived with the defendant at the Fifth Precinct, the two Detectives logged in at the desk and took the defendant to the Detectives ’ squad room. At the squad room, after Detec *1049 tive Acquasanta began reading to the defendant from a card, the defendant interrupted him saying, ‘ ‘ I know all about my rights — you don’t have to read any longer”. The Detective replied that he was required to do so and read as follows: “ Before asking you any questions, you should understand that you have the right to remain silent and that any statement you do make may be used against you in court. Also you have the right to talk to an attorney before answering any questions or to have an attorney present at any time. If you cannot afford an attorney, one will be furnished to you if you wish and you have the right to remain silent until you have had the opportunity to consult with one. Having been informed of these rights, are you now willing to answer questions before consulting a lawyer?”.
After the Detective finished reading from the card, the defendant said: “ I don’t need an attorney.” Then both Detectives began to question the defendant.
He then said: “ What I did last night, I didn’t know was going to be involved in such a big to do about ”. He then related that he was with the complainant, argued, hit him, took his wallet, searched him and looked in his shoes. After this the Detective asked the defendant if he would give a written statement and he said: “ No ”. The entire procedure from the time the Detectives logged in at the desk until the defendant refused to sign a statement, took a half hour. No one struck, threatened, forced or coerced the defendant and he voluntarily gave the oral statement.
At no time did the defendant expressly assent to make an oral statement. Furthermore, the confession made by defendant was not in the nature of a spontaneous utterance, but was in response to questions posed to him by the two Detectives while in custody. Nowhere does it appear that the defendant used any word, sign or gesture that would lead the court to believe that he waived his privilege against self incrimination.
There is a question, however, as to whether he was waiving his right to counsel when he said: “ I don’t need a lawyer ”. He could be merely expressing his opinion of the necessity for counsel on his behalf which is consistent with one claiming innocence. If, instead, he said: “ I don’t want a lawyer ”, there would be no doubt that he was waiving his right to counsel. If there be any doubt about his waiver of counsel under the Sixth Amendment, such doubt does not exist here with respect to his waiver of his privilege against self incrimination under the Fifth Amendment.
*1050 The defendant’s Fifth Amendment privilege against self incrimination may not be abandoned by ambiguous words or by silence. He must affirmatively and expressly waive his privilege against self incrimination. There is no such expression from the defendant in this case. Assuming that the defendant meant that he waived his right to a lawyer, a finding that the defendant waived his Sixth Amendment right to counsel does not place constitutional approval on his confession unless the accused also expressly waives his Fifth Amendment privilege against self incrimination. This, the defendant did not do.
At the conclusion of the fourfold Miranda warnings by Detective Acquasanta, he asked the defendant: “ Having been informed of these rights, are you now willing to answer questions before consulting a lawyer?”. To this inquiry the defendant made no response.
In the light of the following clear-cut mandate of Miranda v. Arizona (384 U. S. 436, 475) the defendant must make an express statement that he is willing to waive his constitutional right.
“ An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in Carnley v. Cochran, 369 U. S. 506, 516 (1962), is applicable here: ‘ Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver.’ ”
If meaning is to be given to the Miranda rule requiring an ‘ ‘ express statement ’ ’ by the defendant, the questions posed by Detective Acquasanta must be answered by the defendant in the affirmative in order to spell out a waiver. The entire purpose of the Detective’s question was geared to invite an answer by the defendant in which he could expressly state either his agreement or his refusal to waive. The question itself was framed to carry into effect a part of the Miranda rule. Silence in respect to this question is not a substitute for an express statement of waiver.
Based upon the foregoing, the court makes the following conclusions of law on this joint identification and Huntley-Miranda hearing:
1. That with respect to the alleged oral statements made to Detectives Anderson and Acquasanta, while they were voluntar *1051 ily given, the People have not proved beyond a reasonable doubt that the defendant knowingly and intelligently expressly waived his Fifth Amendment privilege against self incrimination, and the statements are therefore inadmissible.
2. That the People have presented to the court clear and convincing proof that the photographic identification procedure employed by the police on May 16, 1968 was not unduly suggestive, nor did it taint the subsequent felony hearing identification or the in-court identification made during this hearing.
3. The complainant was able to identify the defendant in court based on his observations made at the time of the alleged incident in Elmont on May 15,1968.
Based on the foregoing, it is therefore ordered that the People may not offer any testimony with respect to the statements made by defendant to Detectives Anderson and Acquasanta on May 17, 1968, and the same are not admissible on the trial of this indictment, and it is further ordered that the complainant may give testimony with respect to the in-court identifications made at this hearing and at the felony examinations heretofore held.