**William Tyrone HARRIS, Petitioner-Appellant,**

v.

**W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellee.**

No. 73-1887

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 1, 1973.

---

* Rule 18, 5 Cir.; Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

William Tyrone Harris, pro se.

Roland Daniel Green, III, Thomas M. Pollan, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

PER CURIAM:

William Tyrone Harris, a prisoner of the State of Texas, has appealed from the district court's denial of his petition for habeas corpus relief. We reverse the ruling below that Harris is not entitled to an out of time direct appeal, and remand the case for further proceedings. Our decision on this point makes it inappropriate to pass on the validity of appellant's other habeas contentions at this time.

The appellant is confined by authority of a conviction of murder with malice. He was represented by privately-retained counsel and tried by a jury, which awarded him a sentence of life imprisonment. On direct appeal, at which the appellant was unrepresented by counsel, the judgment was affirmed. Harris v. State, 1952, 158 Tex.Cr.App. 37, 253 S.W.2d 44.

This is appellant's third appearance in this Court relative to his conviction. Our original opinion affirmed the denial of habeas corpus, Harris v. Beto, 5 Cir., 1968, 392 F.2d 191, but a rehearing was granted when additional evidence indicated that the appellant's indigency might have been manifest to the trial court. The judgment of the district court was remanded with instructions to deny the writ without prejudice, so that the appellant could exhaust his available remedies. Harris v. Beto, 5 Cir., 1968, 399 F.2d 679.

Appellant duly filed his petition for habeas corpus relief in the sentencing court, and an evidentiary hearing was held on the merits. At that hearing, Appellant Harris testified that after his trial, he was unable to retain appellate counsel because of his indigence. He testified further that he wrote letters to the trial judge in an effort to get counsel appointed to represent him, but received no answer.

An earlier evidentiary hearing had been held in the United States District Court, in 1967. There, the appellant's mother testified that she personally had asked the trial judge to appoint a lawyer to represent her son on appeal, but none was appointed. The trial judge testified at the hearing, that he did not recall any visit by appellant's mother, nor having received any letters from Harris con-

cerning his appeal. The judge stated further that because Harris was represented by retained counsel who had not moved to withdraw, he assumed that the same counsel also would represent Harris on appeal. The judge averred that if he had known that Harris was without counsel on appeal, he would have appointed counsel.

■ The trial judge was not asked whether or not he had authorized Harris to take his appeal *in forma pauperis*. Subsequently, in connection with the 1968 appeal in this Court, Harris filed the affidavit of his former retained counsel. The attorney stated therein that he had in fact filed a pauper's oath in the trial court, whereupon the judge had ordered the record on appeal to be prepared without cost to appellant. Counsel did not state whether he had informed the trial court that he and his associate counsel were not going to represent Harris on appeal. At the time of the state habeas hearing both these attorneys were deceased. We consider this affidavit to be competent as evidence in this case, it having been admitted in evidence in the state habeas proceedings. 28 U.S.C. §§ 2246, 2254.

At the state habeas hearing the court reporter who served at Harris's trial testified unequivocally that he prepared the modified trial transcript ("statement of facts") under a pauper's oath. He based this conclusion on the fact that he transcribed it on paper furnished him by the county, whereas he would have prepared the transcript of a paid appeal on his own paper. The court reporter stated he did not recall seeing a pauper's oath in the case, but under the regular procedure he would not see it; the judge would merely advise him that it was a pauper appeal. The court reporter opined that the judge would not have done so unless a pauper's oath had been filed in the case.

The state records in this case do not contain a pauper's oath nor a motion for leave to appeal *in forma pauperis*. Rela-

tive to this, Harris's counsel in his 1967 federal habeas proceedings testified at the state habeas hearing in 1970, that in 1967 the assistant district attorney had refused to allow him to examine the entire case record; and subsequently advised counsel that the file had been lost and the jacket (containing the trial records) was unavailable. When counsel examined the jacket at the 1970 state hearing, it contained no pauper's oath.

In our opinion on the previous appeal, we held that "If appellant was indigent and that status became manifest to the trial court or the appellate court he is entitled to an out of time appeal with the assistance of counsel." 399 F.2d at 680. The prior panel's concerns have been substantiated to our satisfaction by the testimony given at the state hearing.

■ In its more recent denial of habeas relief, the district court made findings "that no state official was aware that he was indigent and without counsel [on appeal] because of his indigency." We do not now hold as clearly erroneous the district court's finding that no state official was aware that Harris was *without appellate counsel* due to indigency. It is our considered opinion, however, that the evidence fully and unequivocally showed that Harris's indigence and his desire to appeal were made known to a state official, namely, the trial judge, and therefore he is entitled to an out of time appeal with counsel.

■ It is clear to us from this record that the trial judge authorized the preparation of the record on appeal without expense to the appellant, who undoubtedly was then indigent. Even disregarding Harris's testimony and that of his mother concerning efforts to obtain appellate counsel, the facts were such that the state, through its officials, knew of Harris's indigency and thus had a duty to ascertain whether Harris had counsel for his appeal; if not, to advise him of his right thereto; and to appoint counsel for him if he so desired.

The Supreme Court held in Swenson v. Bosler, 1967, 386 U.S. 258, 260, 87 S. Ct. 996, 998, 18 L.Ed.2d 33, as follows:

" \* \* \* It is now settled 'that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.' Carnley v. Cochran, 369 U.S. 506, 513 [82 S.Ct. 884, 889, 8 L.Ed.2d 70]. When a defendant whose indigency and desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel."

In the case *sub judice,* the respondent never has suggested that Harris waived the assistance of appellate counsel, nor does the record contain the slightest scintilla of evidence to that effect. Except on the issue of waiver, the facts of this case are similar to those of Beto v. Martin, 5th Cir. 1968, 396 F.2d 432, in which Martin made the appellate court aware of his indigence and desire to appeal. No more was required. See also Horsley v. Simpson, 5th Cir. 1968, 400 F.2d 708, which also involved counsel who initially was privately-retained, but who failed to take an appeal or advise the then-indigent defendant of his rights of direct appeal.

■ We conclude that Appellant Harris is entitled to be granted an out of time direct appeal with representation by counsel. Such an appeal is authorized by Texas procedure. See Crawford v. Beto, 5th Cir. 1967, 383 F.2d 604, and cases cited therein.

Therefore we reverse the ruling of the district court on this point, and remand the case with directions that it be held in abeyance for not longer than 120 days from the date of issuance of our mandate. Within that time the State of Texas may grant Appellant Harris leave to take a direct appeal out of time and provide him the assistance of counsel, or grant him a new trial with assistance of counsel, in which event the district court shall dismiss Harris's petition for habeas corpus. If Texas fails to accord the appellant either an appeal or a new trial with appointed counsel within the specified period, then the writ of habeas corpus shall issue discharging him.

Reversed and remanded, with directions.