THE STATE OF OHIO, APPELLEE, *v.* CRANDALL, APPELLANT.

(Nos. C-820445 and -820446—Decided April 27, 1983.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. William E. Breyer,* for appellee.

*Mr. David J. Boyd,* for appellant.

PALMER, P.J. The defendant, Robert Crandall, was cited to appear on April 27, 1982, at the Hamilton County Municipal Court session held at Blue Ash, Ohio, on two traffic charges: operating a motor vehicle without a license and fleeing a police officer, contrary to R.C. 4507.02 and 4511.02, respectively. The area court was presided over by a referee of the municipal court, who took the defendant's pleas of no contest to both charges and proceeded to a finding of guilty in both instances, sentencing the defendant as appears of record. No transcript of proceedings exists as to these trials, although we are told that the defendant was then unrepresented by counsel.

On May 6, 1982, counsel for the defendant filed "Objections to Report and Findings of Referee," as well as a motion for a new trial asserting a variety of grounds for relief, including the failure of the referee to advise him of the prejudice embodied in the charges involving possible confinement, and the failure to advise him of his right to counsel. Defendant's objections were argued on May 26, 1982, before a judge of the court, and were overruled. The basis of the court's ruling appears in the following extract from the transcript of the hearing:

"THE COURT: I don't see where I have any jurisdiction over this to hear this Motion under Rule 14. Only thing I can suggest is that it would appear to me that my ruling that this Court is without jurisdiction is certainly something that you could take to the Court of Appeals and let them make the decision, because I don't know if there is any case law on exceptions under the Traffic Rules.

"MR BOYD: When does the Court confirm the Referee's finding, the next day?

"THE COURT: Usually, they are signed by the Room B Judge the next morning.

"MR. BOYD: Which makes it almost impossible for you to object, especially when he didn't have counsel.

"THE COURT: Of course, the Court of Appeals says that the statement that is read prior to Court is sufficient for purpose of advising an individual of his rights.

"I'm going to overrule the objection on the sole basis that this Court has no jurisdiction to hear it. It will give you an opportunity to appeal to the Court of Appeals. Maybe now we will get a definite answer from them which is binding on us."

The defendant takes his single assignment of error from the foregoing overruling of his objections to the referee's findings, arguing that the trial court erroneously ruled that it did not have jurisdiction to entertain objections filed nine days after the referee's report. We agree.

A reading of the Traffic Rules confirms the conclusion of counsel for both parties that there is no specific traffic rule setting time limits for the objections to reports of referees. The state does not deny the *availability* of such objections or exceptions in the appropriate case, nor could it in view of the language of Traf. R. 14 that:

"A court may appoint one or more referees for the purpose of receiving pleas, statements in explanation and in mitigation of sentence and of recommending penalty to be imposed, subject to exception *taken by defendant and subject to confirmation by the court.*" (Emphasis added.)

While the defendant has the right to take exceptions to a referee's report and to have them ruled upon by a judge of the court, the state argues that the defendant *waived* this right by failing to file at the time of the hearing a certain form said to be available in the courtroom where these traffic matters are heard and which presumably indicates the defendant's desire to except to the findings of the referee. The state insists that by failing to thus formally except to the referee's report on the hearing date in question, the defendant waived any right to object he might subsequently have had. Specifically, the state argues, the defendant thus waived the right to take a written exception to the referee's findings nine days after they were filed and eight days after they were confirmed by a judge of the court, apparently the day after the referee's report was filed. We find this argument unpersuasive.

The first inquiry to be made requires an examination of the various rules of court to determine what, if any, procedure they dictate for filing exceptions or objections to reports of referees.[1] It is

---

[1] We reject out of hand the state's suggestion that because Hamilton County Municipal Court referees hear only *uncontested* cases, as a matter of practice, and because uncontested cases do not require the "written report of findings and recommendations to the court for confirmation" that a *contested* case requires,

Traf. R. 14, therefore no "report" within the meaning of the rules is made, and no exception may be taken to it. We take it to be obvious that reversible error may and does occur in uncontested cases as well as contested cases. Among other instances, we have had occasion in the past to reverse traffic and other misde-

conceded by counsel for both parties that the Traffic Rules are silent on the *timing* of such exceptions. One therefore proceeds, at the direction of Traf. R. 20, to an examination of the Rules of Criminal Procedure, where, however, a similar lacuna is conceded to exist. Crim. R. 57(B) directs us, in turn, to the Civil Rules, and there, finally, a procedure is expressly dictated by Civ. R. 53(E)(2), which provides:

"Objections to report. A party may, *within fourteen days of the filing of the report,* serve and file written objections to the referee's report. * * *" (Emphasis added.)

We conclude that, absent any other provision in the Criminal or Traffic Rules, the fourteen-day period provided for in the Civil Rules applies to reports of referees in traffic cases, and, therefore, applies facially in the matter at hand. Since the defendant's exceptions were filed within nine days of the referee's report, the exceptions were timely and, unless something occurred taking the instant matter out of the ambit of the general rule, the trial court erred in deciding that it had no jurisdiction to hear the exceptions. The state insists, as previously noted, that such an incident exists in the alleged failure of the defendant, at the conclusion of his trial, to execute a form requesting a hearing before a judge.[2] We are not persuaded, and for several reasons.

Since there is no record in this case of the trial proceedings, we do not know whether the referee informed the defendant (or, as an acceptable alternate, the assembly of defendants prior to calling the calendar of cases) of the necessity of executing some sort of writing in order to pursue a right to a hearing before a judge. *If he did not, we take it to be unarguable that the defendant simply could not, consistent with due process of law, be precluded from exercising what could otherwise be a right to file exceptions within fourteen days of the report.* If he *did* so inform the defendant, or if we must *infer* or *presume* that he so informed the defendant, we must then proceed to an addi-

---

meanor convictions where the court neglected to inform the defendant (or the assembly of defendants at the outset of proceedings) of the effect of the various pleas, and of the defendant's right to counsel. Crim. R. 11 and Traf. R. 10. We have also had occasion to review cases where an unauthorized penalty was applied to an otherwise proper conviction. These and similar matters which will inevitably occur during the press and confusion of traffic and misdemeanor dockets, even uncontested dockets, should be remedied quickly and expeditiously through the instrumentality of exceptions to the referee's report, and not pursuant to formal appeal, with its accompanying time and expense.

Aside from this persuasive policy consideration, we note that, contrary to the state's argument, the referee does in fact make a "report" of his findings in uncontested cases, consisting of a sheet on which various defendants' names and charged offenses are listed, with columned spaces for the referee to indicate such information as plea, finding, confinement, fine, cost, license suspension, and remarks. It is this "report" which the judge "usually" signs in Room B the next morning, giving the disposition the argued finality. We see absolutely no distinction that may legitimately be drawn between contested and uncontested cases in the right of a defendant to except to a referee's report.

[2] The state appends to its brief as "Appendix A" a form entitled "Request for Confirmation Hearing," with blanks for the insertion of the defendant's name, case number, charge, and disposition, and concluding with the language, "The defendant in the above cases hereby takes exception to the ruling by Referee _____, and requests a confirmation hearing before a judge of the Hamilton County Municipal Court." Attaching such material to briefs in this court does not, however, *ipso facto,* make them part of the record cognizable by us. Where, as here, the record is silent as to what part, if any, this form played in the instant case, we have no choice but to disregard its arguable effects had it otherwise formed part of the formal record in the cause.

tional step in the reasoning process, discussed *infra.*

The state argues that where the record is silent, we must *presume* the regularity of proceedings below; that it is the duty of the appellant to demonstrate in the record the existence of prejudicial error. Proceeding from this perfectly legitimate principle of appellate procedure, the state argues that since the record here is silent as to what transpired on April 27, we may not presume that the referee erred in neglecting to inform the defendant of this requirement.

Yet, the rule relied upon by the state is not an unqualified one. Where the matter at hand is one of substantial significance to a defendant's rights, as in the instructions required to be given by Crim. R. 11 and Traf. R. 10, it has been held often enough to acquire the status of black letter law *that we will not presume the state's compliance with a positive mandate of law from a silent record.* See *Cleveland* v. *Whipkey* (1972), 29 Ohio App. 2d 79, 88 [58 O.O.2d 86], citing *Carnley* v. *Cochran* (1962), 369 U.S. 506, and *Boykin* v. *Alabama* (1969), 395 U.S. 238. See, also, *State* v. *Boerst* (1973), 45 Ohio App. 2d 240 [74 O.O.2d 350]. In these cases, the normal rule of appellate procedure relied upon by the state does not hold; in such cases, where the record is silent, the law has set its face against an automatic affirmance based upon nothing more than a *presumption* of regularity, with the possibility that such an affirmance encompasses facts which, if demonstrated, would prove a transgression of some commandment of law violative of a defendant's rights. Clearly this remedial principle applies where some positive constitutional duty toward the defendant reposes in the court, as, for example, instructing a defendant of his right to counsel in any case presenting the possibility of confinement. See *Sheely* v. *Whealon* (C.A. 6, 1975), 525 F. 2d 713.

While it cannot be said that the constitutional significance of failing to inform the defendant of the necessity of excepting to the referee's findings at the hearing, if the defendant wished to except at all, or, alternatively, the failure of a record to show an instruction as to the possible waiver of his right to file exceptions to a referee's report unless a form is promptly signed, rises to the level of other failures to inform under Crim. R. 11 and Traf. R. 10, and perhaps cannot be said to invoke a constitutional right under the Fifth, Sixth or Fourteenth Amendments, at all, so long as the right of appeal to this court remains unencumbered, we are nevertheless reluctant to limit the operation of this remedial principle to these gravest of cases only. Bearing in mind our common experience that the great majority of defendants at an uncontested traffic arraignment are unrepresented by counsel and are unaware of the procedural niceties of law, and bearing in mind that reversible error does, from time to time, occur at these hearings, we find it insupportable that a defendant should be precluded from asserting and testing such error before a judge of the court because of a presumption of waiver arising from a totally silent record.

Another consideration militating against the argument of the state intrudes at this point. Even if we were to assume, notwithstanding the silent record, and contrary to our reasoning above, that the referee made known to the defendant the existence of the "Request for Confirmation Hearing" form and the need to execute it at the time of the hearing in order for the defendant to preserve the right to require a judge of the court to rule on his exceptions, the question still arises whether the court had the right to reduce, by such means, the time interval dictated by Civ. R. 53(E)(2) applicable to these proceedings. An analogy is suggested by App. R. 4, where a party desiring to appeal a final order or judgment is given, generally thirty days from entry of such judgment or order to file the appeal. Could, we ask, the trial

court reduce this time by requiring the putative appellant to sign a form at the time of entry of judgment indicating his desire to appeal, and if he does not execute the form, insist that the right to appeal thereafter was thereby waived? We think it clear that it could not *so shorten* the time requirement of App. R. 4 any more than it *can extend* it, except by motions pursuant to Civ. R. 50(B) and 59. *William W. Bond, Jr. & Assoc.* v. *Airway Development Corp.* (1978), 54 Ohio St. 2d 363 [8 O.O.3d 384]; *Kauder* v. *Kauder* (1974), 38 Ohio St. 2d 265 [67 O.O.2d 333].

The reasons for this conclusion seem to us apparent: both App. R. 4 and Civ. R. 53(E)(2) share a common concern for an interval of time to permit mature reflection, preferably aided by counsel, as to whether the state of the record, and applicable rules of law, make exceptions or appeal both feasible and desirable. This decision is one that should not, and in many instances could not, be made except upon unhurried reflection removed from the emotional trial context. To permit any *reduction* of these time intervals seems to us to run as contrary to both the letter and the policy of the rule as similar attempts to *extend* such time provisions.

For the foregoing reasons, we find appellant's assignment of error to be well-taken and grant the same. Accordingly, we reverse the order of the court finding that it had no jurisdiction to entertain the exceptions to the referee's report, and remand the cause to the trial court for further proceedings consistent with law.

*Judgment reversed*
*and cause remanded.*

KEEFE and DOAN, JJ., concur.