407 So.2d 1005 (1981)
Edward James MITCHELL, Appellant,
v.
STATE of Florida, Appellee.
No. 81-311.
District Court of Appeal of Florida, Fifth District.
December 23, 1981.
James B. Gibson, Public Defender, and Christopher S. Quarles, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and C. Michael Barnette, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
The primary issue raised by this appeal concerns the propriety of requiring a defendant to proceed to trial pro se as a result of his rejection of appointed counsel and failure to obtain private counsel. Although the issue is clear, its resolution is difficult, for it touches upon one of the most complex legal problems confronting trial judges: how to protect the procedural and substantive rights of a balky and hostile defendant who is at odds with his own counsel or who rejects, either expressly or by his conduct, all representation.
In the instant case the defendant, Edward James Mitchell, was charged on May 22, 1980, with multiple counts of grand theft. Thereafter, based upon the defendant's request and affidavit of indigency, the trial court appointed the public defender to represent Mitchell. A member of that office, Anthony M. Cacavio, commenced handling the case. On August 28, 1980, Cacavio filed a motion requesting the court to relieve "him and the office of Public Defender" from further responsibility in the case on the basis that the defendant "rejects counsel's advice and refuses to cooperate fully with counsel" and "has become so adverse and hostile that he necessarily cannot be counseled by the Public Defender's office without a conflict of interest." The motion asked the court to appoint substitute counsel per section 27.53(3), Florida Statutes.
This motion was not acted upon by the trial court. The "conflict," which was never explained or inquired into by the trial court, apparently was resolved temporarily by having another assistant public defender, one James Thurman, take over the case from Cacavio. Mitchell then became displeased with Thurman, also. Thurman appeared with Mitchell for the scheduled trial on September 9, 1980. The public defender himself, Robert Pierce, was present to assist Thurman at the prior special request to appoint substitute counsel.
When the court called the case on September 9th, Mitchell asked to make a statement to the court. This was allowed outside the presence of the jury. Mitchell then stated that he did not want Thurman as his *1006 lawyer "because I don't feel he can give me the proper representation." No further explanation was ever afforded the court for Mitchell's rejection of Thurman. Apparently Mitchell previously had conveyed his dissatisfaction to the court, prompting the court to have Pierce available along with Thurman. The court explained this to Mitchell and asked him, "Now, are you telling me that you don't want these either?"
Mitchell, obviously under the erroneous impression that he had a selective choice of attorneys,[1] said that he had not talked yet with Pierce and that Pierce did not know anything about the case. The court then advised Mitchell that both Thurman and Pierce would be participating in the trial, and Mitchell then reiterated that he did not want Thurman. The following exchange then transpired:
THE COURT: Do you desire for me to discharge the public defender's office to represent you?
DEFENDANT EDWARD JAMES
MITCHELL: They ain't going to give me another lawyer?
THE COURT: No, sir.
DEFENDANT EDWARD JAMES
MITCHELL: I don't want Mr. Thurman to represent me.
THE COURT: All right. Mr. Thurman, I hereby discharge the public defender's office and you may go about your way. Thank you, very much. Mr. Pierce, I appreciate you coming today, you may go about your way also.
MR. PIERCE: Thank you, your Honor.
MR. THURMAN: Thank you, your Honor.
DEFENDANT EDWARD JAMES
MITCHELL: Why you going to dismiss Mr. Pierce, I didn't say I didn't want him, I said I didn't want Mr. Thurman.
THE COURT: You may leave, Mr. Pierce.
At this point the trial court advised Mitchell that he had elected to utilize his constitutional right to defend himself in person, and asked if he was ready to go forward with the scheduled trial. Mitchell protested the dismissal of Pierce, since it was only Thurman he did not want at that point in time. Mitchell then asked for a continuance in order to "contact my people" so they could try to get him a lawyer. After further discussion, the court granted the continuance until the following month.
When Mitchell next returned to court on October 28, 1980, he still did not have an attorney. He requested an opportunity to call his mother at that time to ascertain whether or not she had retained counsel for him. There was no explanation offered by Mitchell as to his failure during the interval between September 9 and October 28 to contact counsel. The trial court said it had been through this scene with Mitchell before, and denied the request. Again, the court inquired of Mitchell as to whether or not he wanted Thurman to represent him. Mitchell definitely did not. He still wanted to talk with Pierce, however. The case then proceeded to trial with Mitchell acting as his own attorney, resulting in conviction on four counts of theft.
Florida Rule of Criminal Procedure 3.111(d) provides:
(d) Waiver of Counsel
(1) The failure of a defendant to request appointment of counsel or his announced intention to plead guilty shall not, in itself, constitute a waiver of counsel at any stage of the proceedings.
(2) A defendant shall not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry into accused's comprehension of that offer and his capacity to make that choice intelligently and understandingly has been made.
(3) No waiver shall be accepted where it appears that the defendant is unable to make an intelligent and understanding choice because of his mental condition, age, education, experience, the nature or complexity of the case, or other factors.

*1007 (4) A waiver of counsel made in court shall be of record; a waiver made out of court shall be in writing with not less than two attesting witnesses. Said witnesses shall attest the voluntary execution thereof.
(5) If a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the defendant appears without counsel.
The key case in regard to the constitutional considerations relative to self-representation in criminal matters is Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In that case, the United States Supreme Court said:
When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Johnson v. Zerbst, 304 U.S. 458, at 464-465, 58 S.Ct. [1019], at 1023 [82 L.Ed. 1461]. Cf. Von Moltke v. Gillies, 332 U.S. 708, 723-724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel. McCann, 317 U.S. 269, at 279, 63 S.Ct. [236], at 242 [87 L.Ed. 268].
Faretta v. California, 95 S.Ct. 2541.
In the instant case the trial judge failed to comply with either the Florida rule or the Faretta standard. There was no inquiry into Mitchell's capacity to intelligently and understandingly make the choice. Cf. Williams v. State, 337 So.2d 846 (Fla. 2d DCA 1976). More specifically, there was no inquiry of record as to Mitchell's mental condition, age, education or experience.
While the record strongly suggests that nothing the trial court could have done, short of discharge of the defendant, would have satisfied Mitchell, the indicated requirements were not met. We can understand, and perhaps even concur in, the trial court's finding that the conduct of the defendant Mitchell constituted a rejection of court-appointed counsel. But without the inquiry required in Rule 3.111(d) or the appearance of private counsel, the public defender (whether Cacavio, Thurman or Pierce) should not have been discharged, even though that defender's ensuing task might have been unpleasant. Mitchell had no right to pick and choose an appointed attorney, and the trouble in this case was that this fact was never fully impressed on him. It was an all or nothing proposition  the office of the public defender or no one. If no one, then the rule sets forth the requisite procedure.
Accordingly, the conviction is reversed and this case remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
DAUKSCH, C.J. and FRANK D. UPCHURCH, Jr., J., concur.
NOTES
[1] See Huckelbury v. State, 337 So.2d 400 (Fla. 2d DCA 1976).