415 So.2d 874 (1982)
Joseph S. DRAGO, Appellant,
v.
STATE of Florida, Appellee.
No. 81-2078.
District Court of Appeal of Florida, Second District.
June 25, 1982.
*875 Jerry Hill, Public Defender, Bartow, and Rick Dalan, Asst. Public Defender, St. Petersburg, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
This case illustrates the difficult problems sometimes faced by trial judges in dealing with accused persons who express unreasonable dissatisfaction with their court-appointed attorneys.
The state charged appellant with grand theft. The court declared appellant indigent and appointed the public defender to represent him. Several weeks later, Public Defender Bruce Taylor filed a motion to withdraw as appellant's counsel. At a hearing before Judge Swanson, Mr. Taylor explained that he and appellant had disagreed over whether to call a certain witness at the trial. Appellant asserted that he wanted to act as co-counsel, but Mr. Taylor was unwilling to agree to such an arrangement. The court denied the motion to withdraw and stated that Mr. Taylor would remain as sole counsel for appellant.
Several days later, Mr. Taylor filed a second motion to withdraw as counsel, pointing out that appellant was insisting that he file motions attacking the Pinellas County jury selection system which he believed to be legally unfounded. Mr. Taylor further stated that appellant had cursed and screamed at him during the course of an interview and had tried to climb through the windows separating attorneys from their clients at the jail. At the hearing on this motion held before Judge Bryson, the court pointed out to appellant that he could either hire his own counsel, represent himself, or have Mr. Taylor represent him. Appellant responded that he could not afford to hire his own counsel and stated that he wanted someone other than Mr. Taylor appointed to represent him. The court announced that Mr. Taylor was a good lawyer, and that he would not direct a change in *876 appointed counsel. Appellant observed that if Mr. Taylor would not file the motions which he wanted filed, he did not want Mr. Taylor to be his lawyer. The court then announced that the appellant could represent himself.
Subsequently, the appellant filed a pro se motion to appoint private counsel to represent him at the court's expense. At the hearing on this motion conducted by Judge Swanson, the following colloquy occurred:
THE COURT: Well, as I've indicated, Mr. Drago, if you can assure the Court that you will cooperate 
THE DEFENDANT: I will cooperate. I will cooperate any way I can.
THE COURT: And give them whatever they need and not cause them any other physical problems, I'll reappoint the Public Defender's office. I don't like to see somebody coming to trial without a lawyer. I think it's damaging both to yourself and to the system. But if you feel that you can get along with the Public Defender's office and you will promise this Court that you will neither curse him, insult him or cause any damages to any assistant Public Defender who is interviewing you, I will reappoint the Public Defender's office. Can you do that?
THE DEFENDANT: Just as long as it's not the same attorney, because I don't think me and him can get along.
THE COURT: I'm not going to guarantee that. That's your choice. I'll reappoint the Public Defender's office, whomever it may be. It may be the same attorney. It may be another attorney. But you've got to assure the Court that you will not physically assault him or curse him or, in any way, talk disparagingly  disagree if you want to.
THE DEFENDANT: That's our whole problem is disagreement.
THE COURT: Can you promise the Court that you will not try to physically assault or cause any problems with the Public Defender?
THE DEFENDANT: Yes.
At this point, the state attorney objected to the continuance of the case which would be necessary if the public defender were reappointed. He argued that the case had been postponed once before on the appellant's motion and that the state's witnesses were present and ready for trial. In actuality, the case had already been continued twice but one of the postponements was at the instance of the state. The court ultimately denied the motion to reappoint counsel, and the case went to trial on the same day. Appellant represented himself before the jury but to no avail.
The sole issue on appeal is whether the court erred in finding that appellant had waived his right to the assistance of counsel and in not reappointing counsel upon the appellant's request. Every indigent person accused of a crime is entitled to the services of a court-appointed lawyer. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). On the other hand, an accused has a constitutional right to represent himself. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Clearly, however, one may not presume that a criminal defendant has waived the right to counsel. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). Before a defendant may be permitted to represent himself, the court must be certain that he has been made aware of the dangers and disadvantages of self-representation. Faretta v. California. In order to represent himself, the accused must competently and intelligently forego the traditional benefits associated with the right to counsel. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1937).
Florida has codified these principles in Florida Rule of Criminal Procedure 3.111(d) which states:
(d) Waiver of Counsel.
(1) The failure of a defendant to request appointment of counsel or his announced intention to plead guilty shall not, in itself, constitute a waiver of counsel at any state of the proceedings.

*877 (2) A defendant shall not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry into accused's comprehension of that offer and his capacity to make that choice intelligently and understandingly has been made.
(3) No waiver shall be accepted where it appears that the defendant is unable to make an intelligent and understanding choice because of his mental condition, age, education, experience, the nature or complexity of the case, or other factors.
(4) A waiver of counsel made in court shall be of record; a waiver made out of court shall be in writing with not less than two attesting witnesses. Said witnesses shall attest to the voluntary execution thereof.
(5) If a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the defendant appears without counsel.
Measured by the foregoing standards, we cannot say that appellant knowingly and intelligently waived his right to counsel. He was not advised of the pitfalls of acting as his own lawyer. The court made no inquiry into his mental condition, his intelligence, or his ability to defend himself against the state's charge. Moreover, when it became evident that the appellant again desired to have appointed counsel and when he finally agreed to cooperate with whoever was appointed to represent him, the court should have reappointed counsel even if it meant a further continuance of the trial.
In reaching our conclusion, we wish to make it clear that the court properly advised appellant that he did not have a right to decide which court-appointed counsel would defend him. Furthermore, Mr. Taylor correctly refused to accede to appellant's request to file motions which he believed devoid of merit. There is no doubt that appellant's unreasonable behavior contributed to the predicament in which he found himself, but this cannot excuse the denial of his constitutional guarantees. See Mitchell v. State, 407 So.2d 1005 (Fla. 5th DCA 1981), in which an equally recalcitrant defendant had been erroneously required to proceed to trial without counsel. The concluding paragraph of the court's opinion is remarkably apropos:
In the instant case the trial judge failed to comply with either the Florida rule or the Faretta standard. There was no inquiry into Mitchell's capacity to intelligently and understandingly make the choice. Cf. Williams v. State, 337 So.2d 846 (Fla.2d DCA 1976). More specifically, there was no inquiry of record as to Mitchell's mental condition, age, education or experience.
While the record strongly suggests that nothing the trial court could have done, short of discharge of the defendant, would have satisfied Mitchell, the indicated requirements were not met. We can understand, and perhaps even concur in, the trial court's finding that the conduct of the defendant Mitchell constituted a rejection of court-appointed counsel. But without the inquiry required in Rule 3.111(d) or the appearance of private counsel, the public defender (whether Cacavio, Thurman or Pierce) should not have been discharged, even though that defender's ensuing task might have been unpleasant. Mitchell had no right to pick and choose an appointed attorney, and the trouble in this case was that this fact was never fully impressed on him. It was an all or nothing proposition  the office of the public defender or no one. If no one, then the rule sets forth the requisite procedure.
407 So.2d at 1007.
The judgment is reversed, and the case remanded for a new trial.
SCHEB, C.J., and SCHOONOVER, J., concur.