**Wayne FOX, Petitioner–Appellee,**

v.

**Ira KELSO, Respondent–Appellant.**

**No. 89–8791.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 7, 1990.

Dennis R. Dun, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellant.

Marilynn B. Kelm, Smith, White, Sharma and Halpern, Atlanta, Ga., for petitioner-appellee.

Before KRAVITCH and COX, Circuit Judges, and DYER, Senior Circuit Judge.

COX, Circuit Judge:

In this habeas corpus case, the petitioner asserts that his guilty pleas to four misdemeanors should be vacated because they were not made intelligently and voluntarily with the knowledge that he would be waiving his constitutional right against self-incrimination. The district court found that the state had failed to carry its burden of proving that the guilty pleas were knowing and intelligent, and granted relief by vacating the convictions.[1] The state appeals.

---

1. The effect of this grant of relief is that the petitioner will receive about five months credit for time served on his current felony sentence, since the commencement date for his present

## I. BACKGROUND AND PROCEEDINGS BELOW

In late May 1986, Wayne Fox was arrested and charged in Fannin County, Georgia, with the armed robbery and aggravated assault of a taxicab driver. Attorney Roger Bradley was appointed to represent Fox at his Probable Cause Hearing, held on May 29, 1986. When the hearing commenced, the State Superior Court judge, Judge Milam, announced that prior to taking up the probable cause matter, he intended to impose sentences on Fox for four outstanding misdemeanors to which Fox allegedly had pleaded guilty, but for which he had never been sentenced.

Attorney Bradley stated to the court that he had been appointed to represent Fox only in the robbery case, that he was not familiar with any previous misdemeanors, and that in fact he was not then representing Fox on the charges that the judge was imposing sentences on that day. The judge announced that he understood Bradley's position and then immediately launched into sentencing. The judge said that Fox had pleaded guilty in Fannin County on August 28, 1981, either before Judge Neville or Judge Mills, to three charges: first, to attempting to elude an officer (Accusation No. S81R–211); second, to obstruction of an officer (Accusation No. S81R–212); and third, to driving under the influence (Accusation No. S81R–213). Judge Milam said that Fox had also pleaded guilty in Fannin County on October 3, 1980, to theft by taking (Accusation No. S80R–307).

The discussion that took place among the court, Fox, and the probation officer—who testified that he had been present when Fox pled guilty in 1980 and 1981—runs for the first eight pages of the probable cause hearing transcript. Judge Milam stated that Fox had waived the presence of counsel and pleaded guilty to the four charges mentioned previously. The judge told Fox that he had been scheduled to be back in court for sentencing on those pleas, that efforts had been made to get him back, and that Fox had failed to appear for his sentencing when scheduled. The probation officer, Richard Wood, said that an appropriate bench warrant had been issued, but no evidence of such a warrant was produced. Apparently the court had delayed sentencing in 1980 and 1981 while investigating possible outstanding charges in another county or while awaiting a presentence report.

Fox stated that he did not recall pleading guilty to a DUI charge, but that he believed someone had advised him to plead nolo contendere. Fox made no response when asked if signatures on the accusations were his. Later, he stated to the judge that he did not realize what he was signing when he signed certain papers, and he informed Judge Milam that he wished to change his plea on the theft by taking charge. The court refused to allow Fox to change his plea. Fox was then sentenced to two concurrent twelve month sentences on Accusation Nos. S80R–307 and S81R–211; to twelve months consecutive on Accusation No. S81R–212; and to twelve months, also consecutive, on Accusation No. S81R–213. In November 1986, Fox was found guilty following a jury trial of robbery by intimidation and simple battery; he later was sentenced and received a total of twenty years on those counts.

In July 1986, Fox filed a *pro se* petition for a writ of habeas corpus in Baldwin County, Georgia, attacking the four misdemeanor convictions in 1980 and 1981. He averred that he had pleaded nolo contendere or not guilty to those charges. Fox raised four grounds in his petition: (1) "Limitations of Prosecutions"; (2) "Denied affective [sic] assistance of counsel"; (3) "Excessive sentence"; and (4) "Illegal Sentence". In the supporting facts section following ground Two, Fox stated: "Attorney stated he was not familiar with case and therefore, *did not have legal assistance of an attorney as the court records will show.* Attorney stated he was not representing me on those cases." In the identical section following ground Four, Fox wrote: *"Petitioner was denied due process of law guranteed [sic] under sixth amendment, whereas accused shall have*

sentence will revert back to the date he began

serving time for the misdemeanor convictions.

*right to counsel,* Petitioner states sentence is illegal due to the fact statue [sic] of limitations has ran out on the charges." (emphasis added).

A hearing on the petition was held in Baldwin County in November 1986. Fox testified that Attorney Bradley was not representing him on the charges for which he was sentenced on May 29. He stated that he had pleaded nolo contendere to the 1981 DUI charge and had been released by the judge at that time. Fox said that he had not been convicted of and had not pleaded guilty to the other three charges. When shown the accusations which allegedly bore his signature, Fox testified that the signature on the DUI plea "could be" his, but that he wasn't sure; as to the other three, he denied that they bore his signature or said he did not think they did. Certified copies of the four accusations were admitted into evidence.[2] The state gave a brief closing argument in which it argued that Fox had pleaded guilty to the various charges as evidenced by the accusations and then had fled the jurisdiction before sentencing. As evidence of this, the state submitted evidence that Fox had been arrested and had served time for charges in Tennessee.[3] The state pointed out that Fox's lawyer at the probable cause hearing was there on another matter, was not representing Fox on the misdemeanors, and therefore, that his claim of ineffective counsel was "not appropriate" and was due to be dismissed. Thereafter, the judge denied Fox's petition from the bench.[4]

On July 21, 1987, Fox filed a second state habeas petition, this time in Butts County. In this petition, he raised basically the same issues raised earlier in the Baldwin County petition. A brief hearing was held and Fox's petition was dismissed as successive on September 2, 1987.

Thereafter, with the assistance of counsel, Fox filed a petition for writ of habeas corpus in the United States District Court. The United States magistrate to whom the case was referred identified five issues contained in the petition:

> In the instant application the applicant contends (1) that he did not plead guilty to the four misdemeanor charges, (2)

**2.** The transcript of the May 29, 1986 hearing was also admitted into evidence. On page 14 of the state habeas hearing, in response to questions by the state attorney, and on pages 16 to 18 of the transcript of that hearing, in response to questions by the judge, Fox was vague about why Bradley had been appointed to represent him at the May 29 hearing. From what appears in the habeas transcript, the judge might have assumed that Bradley was appointed to represent Fox at the misdemeanor sentencing as well as for the probable cause matter; Fox did not disclose the existence of the armed robbery and assault charges that led to his arrest, although late in the hearing the state revealed, in a brief closing argument, that "counsel was appointed to represent Petitioner in 1986 pursuant to armed robbery charges that he was charged with at that time." Transcript of 11/5/86 state habeas hearing, ROA Vol. 1, Tab 2, Exh. 5. Because the judge denied Fox's habeas petition from the bench, he may never have read the transcript of the probable cause hearing before he ruled. Had he read that transcript, he at least would have known that Fox was without a lawyer at the sentencing hearing, and this might have prompted further inquiry into whether Fox had been counseled, or had knowingly and voluntarily waived counsel at the guilty pleas.

**3.** Fox denied that he had fled the jurisdiction. He admitted that he had been arrested and served jail time in Tennessee. Fox also stated that he signed extradition papers releasing him from Polk County, Tennessee, to the custody of Fannin County, Georgia. After two days in Fannin County jail, he was taken to Whitfield County, Georgia, brought before a judge there, and released after the charges were dropped. The hearing record fails to make clear exactly when this happened, but other evidence in the record indicates these were the events surrounding his arrest and plea to the theft by taking misdemeanor in October 1980. From this it may be inferred that Fox was released from Fannin County jail when he could have been sentenced on that misdemeanor, but that Fannin County failed or neglected to sentence him, or even to order him returned from Whitfield County.

**4.** The Baldwin County Court issued a final written order denying the habeas petition on March 12, 1987. In that order, the court grouped together grounds One and Four of the petition in its discussion, relating to the statute of limitations/illegal sentence. Ground Two, ineffective assistance of counsel, was denied because Fox in fact had no counsel at all at the sentencing hearing. The court never addressed, however, Fox's claim that he was denied the right to counsel, raised in the supporting facts section of ground Four.

that, if he did plead guilty, his pleas were involuntary and not intelligently entered, (3) that he was denied counsel with respect to the entry of said pleas and at sentencing, (4) that he was not advised of his right to counsel thereat, and (5) that his convictions and sentences therefor violated his rights to due process.[5]

ROA Vol. 1, Tab 1.

An evidentiary hearing was held before the magistrate, and numerous witnesses testified. Among them were Fox, Judge Pope (who apparently took the October 1980 plea), Judge Mills (who took the 1981 pleas), Judge Milam (who sentenced Fox on the misdemeanors in 1986), Roger Queen (the District Attorney at the time Fox was sentenced), and Kenneth Wood (the probation officer at all times). Fox denied that he had ever been informed of his *Boykin v.*

*Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), rights when he allegedly pleaded guilty.[6] He stated that he did not believe the signatures on the accusations were his. None of the other witnesses specifically recalled Fox pleading guilty either in 1980 or 1981. Based on his courtroom log, Probation Officer Wood stated that he was familiar with Fox entering the pleas; however, none of the witnesses for the state could testify what rights Fox was informed of or how he responded to questions by the court. Judges Pope, Mills and Milam all described the custom and practice of plea taking in Fannin County, but none had any recollection of this actual plea. There was testimony that all pleas would be taken before a court reporter although not necessarily transcribed. In this case, the state was unable to identify who the court reporter might have been;[7]

---

5. The form petition contains one ground for relief, "Denial of the right to counsel at a critical stage of the criminal proceeding." The form petition incorporates by reference a multipage typewritten petition in which Fox's attorney sets forth in detail the aspects of this claim. ROA, Tab 1. The state filed an answer denying that any of Fox's constitutional rights had been infringed at sentencing, and asserted that Fox raised only the denial of right to counsel *at sentencing* in his petition, although it conceded that Fox's petition and brief "makes passing reference to the proceedings under which his guilty plea was originally obtained." ROA, Tab 2, p. 2. The state also filed a motion to dismiss the petition as unexhausted or procedurally defaulted, arguing that Fox never presented the denial of counsel claim to the state courts. ROA, Tab 3. The magistrate denied the motion to dismiss and ordered an evidentiary hearing, holding that Fox raised numerous claims in his federal petition relative to the voluntariness of his pleas and the denial of the right to counsel at his guilty pleas. ROA, Tab 4. Thereafter, Fox amended his petition specifically to include an attack on the pleas themselves: "Petitioner was denied the constitutional protection of not being compelled to be a witness against himself when he entered involuntary and unintelligent guilty pleas to four misdemeanors." ROA, Tab 6. The magistrate reported that Fox might not have exhausted this issue and recommended that the action be stayed to give Fox a chance to present the claim in state court.

By order dated January 10, 1989, the district court declined this recommendation and ordered an evidentiary hearing on the merits. ROA, Tab 10. The court never explicitly ruled on whether Fox had exhausted this claim; it noted that the claim "was not presented in his written applications for state habeas corpus re-

lief; and was only touched upon in his testimony during the November 5, 1986, hearing on the first state application." *Id.* at 2. The court did state, however, that "further exhaustion will not be required" where the state indicated that it would seek dismissal on successive petition grounds in the state court.

6. In *Boykin* the Supreme Court granted certiorari to review the state supreme court's affirmance of convictions on direct appeal. The petitioner's claim was that his guilty pleas were not made intelligently and voluntarily. The Court noted that three important federal rights are implicated in a guilty plea: First, the privilege against compulsory self-incrimination; second, the right to trial by jury; and third, the right to confront one's accusers. The Court held that "[w]e cannot presume a waiver of these three important federal rights from a silent record." The Court adopted the standard it created in *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), which was a habeas challenge to waiver of the Sixth Amendment right to counsel: "'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'" 395 U.S. at 243, 89 S.Ct. at 1712.

7. More precisely, Judge Pope (who took Fox's 1980 guilty plea), when asked who would have been his court reporter when he took this guilty plea in 1980, replied "I finally found out who it was." ROA Vol. 2, p. 10. Judge Pope explained further that this court reporter left the state when Pope assumed the Georgia Court of Appeals in January 1981, and that to his knowl-

any tape or transcript that might ever have existed is gone. Judge Mills discussed a number of documents that should be present in the typical case which would help demonstrate that Fox's pleas were knowing and intelligent; none of those was present in this case.[8] There was also testimony that Fox had been released to Whitfield County in October 1980 to face charges there and that they had been dismissed and Fox released without any detainer or hold lodged against Fox for return to Fannin County for sentencing.

The district court adopted the magistrate's recommendation that Fox's guilty pleas be set aside. The magistrate found that the state failed to show that Fox had been properly advised of his right to remain silent, to have appointed counsel, to be advised of the charges against him and the punishment therefor, and to confront the witnesses against him, and thus failed to show that he voluntarily and intelligently pleaded guilty to the theft by taking charge. The magistrate found further that the state failed to demonstrate that Fox knowingly and intelligently pleaded guilty to the 1981 misdemeanors and that, when sentenced in 1986, Fox was not advised of his right to counsel at sentencing nor was he given the opportunity to waive his right to counsel. Because the state failed to demonstrate that any of Fox's guilty pleas were obtained constitutionally, the magistrate concluded that the pleas were due to be vacated. The state appeals this grant of habeas relief.

## II. DISCUSSION

The state advances three arguments on appeal. First, the state argues that the district court erred in deciding that Fox's four misdemeanor pleas were not knowingly and voluntarily entered and that Fox was improperly denied the right to withdraw his plea on the theft by taking misdemeanor, for the reason that those grounds are unexhausted. Second, the state contends that any challenge to the Fannin County misdemeanors is moot, since these sentences had expired when Fox brought his federal petition. Third, the state contends that the district court erred in failing to address the defense of laches and that, at a minimum, the case should be remanded for this reason.

## A. JURISDICTION

■ Citing *Maleng v. Cook*, — U.S. ——, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989), the state contends that Fox's petition is moot because he challenges misdemeanor convictions for which his sentences have expired. Since this is a challenge to federal jurisdiction to hear the petition, we address this issue first.[9]

In *Maleng*, the prisoner challenged a prior, fully served conviction seven years after that sentence expired. He asserted that the prior conviction was unconstitutional and that it had been used to enhance a subsequent state conviction. The Supreme Court held that, without more, the mere possibility that a prior conviction might be used to enhance a sentence for a subsequent crime was insufficient to achieve "in custody" status for purposes of federal habeas. In *Maleng*, such an enhancement did in fact occur. The Court held that the petitioner satisfied the "in custody" requirement for federal jurisdic-

---

edge had since died. As to both the 1980 and 1981 pleas, a legal assistant for the state testified that no transcripts had been filed, that any tapes that may have been made by Judge Pope's court reporter in 1980 would have remained his property and were unavailable or do not exist, and that after checking with several sources (including those court reporters likely to have taken down the pleas), she still had not ascertained who might have been the court reporter at Fox's 1981 pleas before Judge Mills.

8. These would consist of a warrant for arrest, notice of arraignment, a waiver of rights form,

bond documentation (if defendant made bond), and documents showing that Fox forfeited bond for failure to appear for sentencing and/or a bench warrant for the same.

9. The state labels this challenge as a mootness issue, but in fact argues it as a jurisdictional issue, on the ground that Fox is no longer "in custody" under the convictions he is attacking. *See* 28 U.S.C. § 2254(a). The state clearly intends a jurisdictional attack, citing *Maleng*, so we construe the issue accordingly.

tion because he *was* in custody under the *second* sentence, irrespective of the fact that the prisoner mistakenly designated the sentence under attack as the expired sentence. The Court expressed no view on the extent to which the expired sentence itself would be subject to challenge in the attack on the later sentence it was used to enhance.

The state argues that Fox's misdemeanors were not used to *enhance* a later sentence, as was true in *Maleng,* and therefore that no jurisdiction exists to consider his petition. We disagree. The difference between this case and *Maleng* is in form, not substance. The misdemeanor sentences that Fox served delayed the date from which he will receive credit for time served against the felony convictions under which he is currently incarcerated. In our view, *Maleng* does not affect the validity of binding precedent that allows attack on a prior expired conviction under the circumstances of this case. *See Cappetta v. Wainwright,* 406 F.2d 1238 (5th Cir.), *cert. denied,* 396 U.S. 846, 90 S.Ct. 55, 24 L.Ed.2d 96 (1969) [10]; *see also Harrison v. Indiana,* 597 F.2d 115 (7th Cir.1979).

## B. EXHAUSTION OF CLAIMS

The state asserts that the district court should never have considered Fox's claims that (a) his four guilty pleas should be vacated because they were not knowingly and voluntarily entered into, and (b) that he was improperly denied his right to withdraw the theft by taking plea. The state claims that it has maintained throughout the litigation that these grounds were never presented to the state courts and thus that they are unexhausted. Return to the state courts would not be futile, it is con-

tended, because of the possible exception to the successive petition defense provided by O.C.G.A. § 9–14–51 (1982).[11] *See also, Cherry v. Director, State Bd. of Corrections,* 613 F.2d 1262, 1265 (5th Cir.) *approved and adopted,* 635 F.2d 414, 417 (5th Cir.) *(en banc), cert. denied,* 454 U.S. 840, 102 S.Ct. 150, 70 L.Ed.2d 124 (1981) (possibility that unexhausted claim might later be considered successive if prisoner fails to make showing under section 9–14–51 does not demonstrate that return to state court is futile).

In his recommendation dated December 9, 1988 (after the plaintiff amended and added the claim concerning the unknowing and involuntary nature of the pleas), the magistrate noted that these claims may be unexhausted and recommended that the petition be stayed pending a return to state court. The district court rejected this suggestion and ordered a hearing. In its order, the district court acknowledged that these claims had been touched on in the state hearing, but held implicitly that they had not been fairly presented. The court then ruled that a return to the state court would be futile and therefore that "further exhaustion will not be required."

■ Exhaustion presents a mixed question of law and fact. The district court's ultimate conclusion that a claim is exhausted is subject to *de novo* review. We have reviewed the record on the state habeas petitions and conclude that under the standard applicable to *pro se* state habeas petitions in Georgia, the issue was presented and therefore was exhausted. *See McAuliffe v. Rutledge,* 231 Ga. 1, 200 S.E.2d 100, 102 (1973) ("Habeas corpus proceedings are not bound by ties of technical

---

**10.** In *Cappetta,* it was held that

[T]he court has jurisdiction under the federal habeas statute ... to determine whether the relationship, as claimed, between the present confinement and the Dade County judgment [the expired conviction] is such as would result in the appellant receiving credit in some degree on the Hillsborough sentence [the sentence of confinement] if he should prevail on the merits of his petition.

406 F.2d at 1239.

**11.** Section 9–14–51 states that:

All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

pleading, but embrace every legitimate issue involved in an evidentiary determination by the court of the legality or illegality of the confinement."); *Johnson v. Caldwell,* 229 Ga. 548, 192 S.E.2d 900 (1972). When he was sentenced, Fox stated that he had pleaded nolo contendere to the DUI charge, and that he had not pleaded guilty to any other charges. When shown his signature on the accusations, he stated that he had not realized what he was signing. At the first state habeas hearing, he denied that he pleaded guilty to any of the misdemeanors and denied that signatures on the accusations were his. These facts are sufficiently similar to those in *Johnson* that it controls the question of whether Fox raised claims concerning his pleas that the state court could have addressed. By denying that he had pleaded guilty to these misdemeanors and by stating that he had not known what he was signing or that those signatures were not his, Fox placed in issue the question of whether his plea was obtained constitutionally. Under *Johnson,* these matters were before the state court.

### C. LACHES

In their third ground of appeal, the state argues that the district court erred in failing to consider whether Fox's delay in bringing his habeas petition caused prejudice to the state. The state asks us to remand to the district court with direction that it address this issue. In light of the state's position on the record that Fox was obligated to challenge the validity of his misdemeanor convictions before he was ever sentenced on them, we exercise our discretion to resolve this issue without remand. *See, Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt").

Rule 9(a) of the Rules Governing Section 2254 Cases states as follows:

A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

The state contends that it was prejudiced in responding to Fox's claims concerning the constitutionality of his guilty pleas because the memories of witnesses had been dimmed by the passage of time and because it was unable to locate the necessary documents eight years after these pleas were entered. At the federal evidentiary hearing, the state maintained that the laches argument went to the guilty pleas in 1980 and 1981, and not to the sentencing in 1986, for which a transcript exists. The court questioned the state about whether Fox could have, or should have, attacked the pleas prior to his sentencing in 1986. The state responded:

Our position is yes, if these were not knowingly and voluntarily entered regardless of the sentence that was going to be imposed, the threat of the sentence was there, and Mr. Fox says he didn't even know it. He denies entering the pleas, so I think there is a credibility question that is being raised here but, yes, he had the obligation to challenge them. He had the obligation to not wait until 1988 in Federal District Court to raise this challenge. At the least, he should have raised them in 1986 when he prepared his own petition and knew all this. He came into court and testified.

You know, as far as our position, your Honor, we have waited eight years to litigate this, and you can see from Judge Pope's testimony here today and even Mr. Fox's testimony that a lot of water has gone underneath the bridge between then and now, . . .

ROA, vol. 2, page 56.

█ To determine whether the state was prejudiced by Fox's failure to challenge the validity of his misdemeanor convictions at an earlier date, it is first necessary to determine who has the burden of proof on this issue. Ordinarily "the burden of prov-

ing a constitutional violation ... lies with the petitioner in a habeas proceeding." *Bruce v. Estelle,* 536 F.2d 1051, 1056 (5th Cir.), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). In habeas challenges to the validity of a guilty plea, however, courts uniformly assign to the state (once the petitioner satisfies his threshold burden of showing noncompliance with the requirements of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)), the burden of showing that the plea was obtained constitutionally.[12] *See, Le Blanc v. Henderson,* 478 F.2d 481 (5th Cir.1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974); *Bryant v. Elliott,* 472 F.2d 572 (5th Cir.1973); *Nelson v. Callahan,* 721 F.2d 397, 399 (1st Cir. 1983); *United States ex rel. Sanders v. Maroney,* 438 F.2d 1185 (3d Cir.1971); *Dunn v. Simmons,* 877 F.2d 1275, 1277 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990) (state must make "clear and convincing showing with this extrinsic evidence that the plea was in fact intelligently and voluntarily entered"); *Frazier v. Scroggy,* 833 F.2d 1012 (6th Cir.1987), *cert. denied,* 485 U.S. 1036, 108 S.Ct. 1597, 99 L.Ed.2d 912 (1988); *Sullivan v. Rees,* 803 F.2d 721 (6th Cir.1986); *Sizemore v. District Court, 50th Judicial Dist.,* 735 F.2d 204 (6th Cir. 1984); *Roddy v. Black,* 516 F.2d 1380 (6th Cir.), *cert. denied,* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975); *United States ex rel. Grundset v. Franzen,* 675 F.2d 870 (7th Cir.1982); *Griffith v. Wyrick,* 527 F.2d 109 (8th Cir.1975); *United States v. Pricepaul,* 540 F.2d 417 (9th Cir.1976); *Sena v. Romero,* 617 F.2d 579 (10th Cir.1980); *Cox v. Kansas,* 456 F.2d 1279 (10th Cir.1972). Although the decision in *Clayton v. Blackburn,* 578 F.2d 117 (5th Cir.1978), appears to place the burden on the petitioner, we conclude that it refers only to the initial threshold burden on the petitioner to present a *prima facie* case. *See Franzen,* 675 F.2d at 877.

 From the record, it is apparent that Fox demonstrated that his guilty pleas were not taken in accordance with the pro-

cedures mandated in *Boykin,* thereby shifting to the state the burden to prove that they were nonetheless knowing and intelligent. The state insisted that it was Fox's duty to attack these guilty pleas at an earlier date, presumably when there would have been documentation sufficient to prove their validity and memories which were clearer. Perhaps it is true that the constitutionality of the guilty pleas would have been easier for the state to prove had the challenge been instigated earlier, but the fact remains that when sentenced in 1986, Fox asserted that if he signed the accusations in question, he did not know what he was signing. At his first state habeas proceeding, he challenged the validity of his signatures, thereby opening to question the matter of whether the rights purportedly waived were waived knowingly and intelligently. Fox has consistently stated that he did not plead guilty to the misdemeanors, that he pled nolo contendere to the DUI charge, and was then released by the judge. The state presented no credible evidence that a sentencing date had been set, that Fox was notified to return for sentencing, that Fox absconded from the jurisdiction with the knowledge that he was due to be sentenced, that he forfeited a bond for failure to appear, that any bench warrant was issued against him, or that any hold, detainer or request for return had been lodged against him when he was released to Whitfield County in 1980. Other than Fox's purported signature on the accusations, there is no evidence that he knowingly and intelligently waived his constitutional rights when he pled guilty. There was no evidence that these pleas were accepted by the court. No transcripts of the guilty plea proceedings exist; the state did not produce records that would disclose who the court reporter, if there was one, would have been. Several witnesses testified regarding the custom and practice of taking guilty pleas in Fannin County; none could specifically recall that Fox was so questioned. The Waiver of Rights form, which Judge Mills testified normally exists in such a case, does not

12. *See,* footnote 5, *supra.*

here. The backs of the three ticket-accusations (Accusation Nos. S81R–211 through 213) contain spaces explaining that the defendant was informed of his *Boykin* rights, and that the plea was accepted; these are not signed.[13] There is virtually no documentation or other evidence supporting the state's contention that Fox pleaded guilty after a knowing and intelligent waiver of his rights, and because there is no proof that such evidence ever existed, we find the state's laches argument to be without merit.

## III. CONCLUSION

The judgment of the district court granting Fox relief on his petition is AFFIRMED.

---

**13.** Judge Mills testified that he did not fill in or sign the information contained on the backs of these tickets because ink pens do not write well on the back of these forms. Instead, he referred to the Waiver of Rights form which affirms that a defendant was explained his *Boykin* rights, and that he waived the same knowingly and voluntarily. As noted, such a form was not produced in this case.