OPINION
Sharlene Spurlock Delong appeals from a judgment of the Fairborn Municipal Court which found her guilty of two counts of domestic violence.
Police were called to Delong's residence on Monday, August 14, 2000, where Delong had been involved in an altercation with her husband and two minor daughters.
As a result of the police investigation, Delong was cited for three domestic violence offenses in violation of R.C. 2919.25(A). Delong was tried to the court on October 9, 2000, at which time the state dropped the charge involving Delong's husband and presented evidence regarding the alleged domestic violence against Delong's daughters, Nicole and Amanda. Delong, representing herself, also presented evidence. The trial court found Delong guilty of two counts of domestic violence. It sentenced her to one hundred and eighty days in jail for each offense, to be served consecutively, and fined her $150 plus costs. The trial court suspended one hundred and twenty days of each sentence. It then also suspended the remaining sixty days of each sentence and placed Delong on probation for two years on the condition that she get treatment for alcohol abuse.
Delong raises three assignments of error on appeal.
 1. THE TRIAL COURT ERRED BY REFUSING TO APPOINT TRIAL COUNSEL IN VIOLATION OF MRS. DELONG'S RIGHT TO DUE PROCESS AND TO COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND RULE 44 OF THE OHIO RULES OF CRIMINAL PROCEDURE.
Under her first assignment of error, Delong argues that she was denied her Sixth Amendment right to the assistance of counsel.
"The constitutionally protected right to the assistance of counsel is absolute. `* * * [A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense * * * unless he was represented by counsel at his trial.'" State v. Tymcio (1975), 42 Ohio St.2d 39, 43, citing Argersinger v. Hamlin (1972), 407 U.S. 25, 37, 92 S.Ct. 2006, 2012. This principle is embodied in Crim.R. 44, which provides:
 (A) Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings * * * unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.
 (B) Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel.
Noting that Crim.R. 44 refers to one who is "unable to obtain counsel," rather than to one who is "indigent," the supreme court has observed that, "[t]o make the right to the assistance of court-appointed counsel a factual reality, the determination of need must turn, not upon whether an accused ought to be able to obtain counsel, but whether he is in fact able to do so." Tymcio, 42 Ohio St.2d at 45. Thus, the trial court has a duty to inquire fully into any claim of inability to obtain counsel made by an accused. Id., paragraph three of the syllabus; State v. Kleve (1981), 2 Ohio App.3d 407, 409; State v. Haag (1976), 49 Ohio App.2d 268,270-271. The referral of a defendant to the public defender's office for a determination of his eligibility for that office's services does not necessarily discharge a court of its duty to determine whether a defendant is able to obtain counsel. See Tymcio, 42 Ohio St.2d at 45; State v. Campbell (1999), 132 Ohio App.3d 880, 886 (Walters, J., concurring).
In Delong's case, the trial court referred her to the public defender's office on August 18, 2000 during the following exchange:
 THE COURT: Are you going to be able to afford an attorney if you decide you want one? DELONG: No. THE COURT: How do you support yourself? DELONG: I have a part-time job. I have a husband. THE COURT: Is your husband working full-time? DELONG: At the moment, he's laid off. Their work's slow. THE COURT: Is he the alleged victim? DELONG: Yes, he is. THE COURT: I'll refer you to the Public Defender's Office. * * *
When the parties reconvened on October 9, 2000, the following exchange occurred:
 THE COURT: * * * Ms. Spurlock [Delong], you are going to be representing yourself, is that correct? DELONG: No, it is not. I would like an attorney. THE COURT: Why didn't you get one then? DELONG: I can't afford an attorney. THE COURT: Did you check with the Public Defender? DELONG: Yes, I did. THE COURT: And you don't qualify? DELONG: They said they go back for the last year. My husband and I have been together for the last year. They included his income. THE COURT: All right, so you did not qualify. Back to my original question, you did not qualify for services of the Public Defender, is that correct? DELONG: Yes. THE COURT: And then you chose, for whatever reason, you chose to not have an attorney represent you today, is that also correct? DELONG: No, I did not choose that. I can't afford an attorney. THE COURT: We are proceeding today with you not having an attorney since this case has been pending since August 14th and you don't have an attorney present and you don't qualify for free legal services.
In our view, the trial court's inquiry into whether Delong was able to obtain an attorney was insufficient insofar as it was based entirely on her eligibility for the public defender's services. Delong stated that the public defender's determination had relied, in part, upon her husband's income. It was unclear from the record, however, whether Delong was still living with her husband and whether his income was available to her. Given that Delong's husband was one of the alleged victims of the offenses with which she had been charged, the trial court should have inquired further into this matter. Moreover, Delong had stated at the prior hearing (albeit in front of a different judge) that her husband had been laid off from his job. Thus, the trial court did not inquire fully into Delong's claimed inability to obtain counsel, as it was required to do. See Tymcio, 42 Ohio St.2d 39 at paragraph three of the syllabus.
Having taken the trial court to task for its less than thorough inquiry into Delong's financial circumstances, we nevertheless overrule the first assignment of error. In these petty offense cases, the trial court was not required to appoint counsel for Delong. Crim.R. 44(B), supra. Having chosen not to do so, however, and absent a waiver of counsel, the trial court was precluded from imposing a sentence of confinement as punishment. Id. The matter of confinement is the subject of the second assignment of error, which we will sustain.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED BY IMPOSING A SENTENCE OF CONFINEMENT UPON MRS. DELONG WITHOUT FIRST OBTAINING A VALID WAIVER OF COUNSEL.
In her second assignment of error, Delong claims that she should not have been sentenced to a period of incarceration because she had not been afforded counsel and had not knowingly and intelligently waived her right to counsel. She points out that Crim.R. 44(C) requires that "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22." The state acknowledges that Delong did not expressly waive her right to counsel and that a valid waiver cannot be presumed from a silent record. See Haag, 49 Ohio App.2d at 270; State v. Biggs (May 5, 1992), Greene App. No. 91 CA 11, unreported, citing Carnley v. Cochran (1962), 369 U.S. 506, 82 S.Ct. 884. The parties disagree, however, on the appropriate remedy for the failure to obtain a valid waiver on the record. The state contends that the case should be remanded for resentencing only, but Delong maintains that her conviction should be reversed and a new trial ordered.
We have previously held that, when a criminal defendant who has been unable to obtain counsel is convicted of a petty offense and sentenced to a term of imprisonment, after having been denied the right to counsel, the appropriate remedy is to vacate the sentence. State v. Gray (Nov. 14, 1997), Montgomery App. No. 16282, unreported, citing Argersinger,407 U.S. at 37 and Crim.R. 44(B). In so holding, we observed:
A court may not have the resources to appoint counsel for every indigent defendant who is charged with a jailable offense. Under those circumstances, the state should not be prevented from prosecuting the defendant, and the constitutionally guaranteed right to counsel is honored by prohibiting a sentence of incarceration. * * *
See, also, State v. Donahoe (Mar. 21, 1991), Greene App. No. 90 CA 55, unreported. The parties do not dispute that Delong was convicted of petty offenses. Even if we assume, for the sake of argument, that Delong would have been able to demonstrate to the court her inability to obtain an attorney if she had been given an opportunity to do so, she still would not have had an absolute right to an appointed attorney. Crim.R. 44(B) provides only that the court may appoint an attorney where petty offenses are involved and that the court may not impose a sentence of incarceration upon a defendant who has been unable to obtain counsel. Where one who was unable to obtain counsel, was unrepresented by counsel, and did not knowingly, intelligently, and voluntarily waive counsel, has been found guilty of a petty offense, there is nothing fatally defective with the judgment in general, but only with the sentence of confinement component of that judgment. Donahoe, supra. Thus, we conclude that Delong is not entitled to a new trial, but she is entitled to be resentenced in accordance with Crim.R. 44(B).
The second assignment of error is sustained.
 III. THE TRIAL COURT ERRED IN CONVICTING MRS. DELONG OF TWO COUNTS OF DOMESTIC VIOLENCE BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO PROVE THAT SHE WAS GUILTY OF THE OFFENSES AND THE VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. MRS. DELONG'S CONVICTION FOR THESE OFFENSES THUS VIOLATES DUE PROCESS.
Delong contends that there was insufficient evidence to support her conviction and that her conviction was against the manifest weight of the evidence. Whether the evidence is legally sufficient to sustain a verdict is a question of law.
State v. Robinson (1955), 162 Ohio St. 486, 486. In considering the sufficiency of the evidence, the pivotal question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
The state's evidence at trial was as follows. Fairborn Police Officer Douglas Collie testified that he was dispatched to a domestic violence call at 18 West Lindberg in Fairborn on August 14, 2000, where he came into contact with Delong, who was clearly intoxicated, her two daughters, and some other family members. When he arrived at the scene, it was reported to Officer Collie that Delong had caused some harm to her two daughters. He testified that the girls had both been very upset and had obviously been crying. The girls reported that their mother had choked them, and Officer Collie observed "broken capillaries underneath the skin" of the girls' necks.
Nicole Elam, age 13, testified that, on August 14, 2000, her mother had come home drunk, had "busted her [bedroom] door down," had grabbed her by the throat, and had put her up against the wall. Nicole claimed that she could not remember what her mother had said to her then, but that she was upset that the girls had allowed a neighborhood friend in the house while the adults were not home. Nicole further stated that Delong had kept her hand on Nicole's throat "the whole time" and that it had been uncomfortable. Then Delong went downstairs and Nicole heard her go through the same process with her younger sister, Amanda. When Amanda came upstairs a short time later, Nicole told Amanda to "call somebody" to come over when she went back downstairs because Nicole was scared. Nicole testified that she had been "teary-eyed" and that Amanda had been crying before help arrived. Nicole stated that she knew her mother was drunk because she was spitting, slurring words, and loud, and because her "attitude was a lot worse" than when she was not drinking.
Amanda Elam, age 10, testified that her mother came downstairs to the laundry room, grabbed her and her little brother and took them to Amanda's room, and grabbed Amanda by the throat. Amanda stated that her mother pushed her down on the bed and said never to disobey her again, and that her mother's hand on her neck had been uncomfortable and had "hurt a little bit."
Delong was prosecuted for domestic violence in violation of R.C.2919.25(A), which provides that no person shall knowingly cause or attempt to cause physical harm to a family or household member. Viewing the evidence in the light most favorable to the prosecution, we believe that a rational trier of fact could have found that Delong had knowingly caused physical harm to her daughters. The evidence does not compel the conclusion that Delong meant to discipline the children rather than to hurt them, as she contends. Moreover, the evidence does not necessarily support Delong's view that grabbing children by the neck and pushing them into a wall or onto a bed constitutes "reasonable corporal punishment."
Delong also argues that her conviction was against the manifest weight of the evidence. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175. In our judgment, although the evidence was not overwhelming, the trial court did not clearly lose its way and create such a manifest miscarriage of justice in convicting Delong that the conviction must be reversed. The conviction was not against the manifest weight of the evidence.
The judgment of the trial court will be affirmed in part and reversed in part, and this matter will be remanded for resentencing in accordance with Crim.R. 44(B) as discussed in this opinion.
BROGAN, J. and YOUNG, J., concur.